THE STATE v. CLEO WILLIAMS, Appellant.—6 S. W. (2d) 915.

Division Two, May 25, 1928.

298

*L. Amasa Knox, Chas. H. Calloway* and *John E. Wesson* for appellant.

*North T. Gentry*, Attorney-General, and *A. B. Lovan*, Assistant Attorney-General, for respondent.

DAVIS, C.—On June 28, 1927, the Assistant Prosecuting Attorney of Jackson County filed in the circuit court two verified informations, charging defendant in each information with rape. The first information charged, on June 27, 1927, the ravishing of one Alta ———, and the second, on June 26, 1927, the ravishing of one Beula ———. Upon defendant pleading guilty as to each charge, the court, on July 13, 1927, entered judgments and sentences, fixing the punishment in each case at death. On July 19, 1927, motions to set aside the judgments were filed, which the court overruled, defendant perfecting an appeal in both cases to this court.

The record shows that about ten days prior to July 13, 1927, it appearing that defendant was without counsel, the court appointed, at his request, William T. Alford and C. W. Middleton as such. On July 12, 1927, Roger Q. Mason entered his appearance as counsel for defendant, having been employed by defendant's mother, Middleton withdrawing as such with consent of the court. In open court on said latter day, defendant offered to plead guilty of raping Alta, as charged in the information, which the court refused to accept, ordering a plea of not guilty entered. On July 13, 1927, after qualifying a panel of twelve jurors, defendant, at the close of the opening statement for the State, confessed his guilt in open court before the court and jury, and·said he was guilty as charged in the information, withdrawing his plea of not guilty, which the court accepted. The court then ordered the jury to retire, and defendant availed himself of the privilege of consulting his attorneys on the question of immunity and leniency, the court informing him that no immunity or leniency of any nature would be granted. The charge was again read and the penalty to which he was subject on a plea of guilty explained to defendant, and he again said he was guilty as charged in the information. The·court thereupon heard evidence

relating to the charge and, being advised as to the circumstances, fixed the punishment at death.

In the case relative to the rape of Beulah, by defendant, he withdrew his plea of not guilty, which the court accepted. The court afforded defendant an opportunity to consult with his friends and attorneys and informed him that no immunity or leniency of any nature would be granted. The charge was again read and the penalty explained to defendant. Whereupon defendant said he was guilty as charged in the information. The court admonished defendant that no immunity or leniency would be granted and defendant reiterated his plea of guilty. In accordance with his plea, the court fixed defendant's punishment at death. However, it may be said that defendant pleaded guilty as to each charge before sentence on either charge was pronounced.

On the motion for a new trial, defendant was examined. He stated that Attorney Mason appeared and questioned him in the presence of his mother in the jail. Mason advised him to plead guilty. He stated that Alford, appointee of the court, did not advise him to plead guilty. He also stated that the court asked him if he understood the nature of a plea of guilty. Alford did not talk to him in jail, so he said. He attempted to plead guilty to the court twice. He pleaded guilty on his preliminary examination before the justice of the peace.

Mason, attorney for defendant, on behalf of the State, testified that he appeared as co-counsel for defendant, and that he talked to him at least twice prior to the trial. The court had appointed Messrs. Alford and Middleton as attorneys, but subsequent to the entry of the appearance of Mason, Middleton was excused by the court.

Mason stated that he did not make defendant a promise that he would be sent to the penitentiary, but he did suggest to him that, if he would plead guilty, he thought the court would give him a penitentiary sentence. He did not think the court would hang him. He told him further that he did not know, but that he did not feel there were twelve men in Jackson County who would not hang him. He did not tell him that he would not receive the death penalty under any circumstances. He told him that he did not know what the court would do, but that he had a better chance before the court than before the jury. He told him that he did not think he would receive the death penalty, but that he could not make him that promise. He remembered hearing the court say that he would make no promise and that, if he took a plea of guilty, he would make no promise of leniency. He heard the court say that no leniency or immunity would be granted, but he took that to mean that the court would

not make any promise at that time; that he wanted to feel free to do as he pleased about it. He heard the court say that, if he took a plea, it would have to be without reservation. He further heard the court ask defendant if he understood it. The court admonished defendant that the penalty prescribed was from two years to death, and that he could impose any penalty that he saw fit. Mason and defendant heard all the statements made by the court, and Mason talked to defendant regarding his plea, telling him that he might as well take his chances before the court. Witness stated that defendant understood most of the matter, but did not think he understood what leniency meant, but that he understood the nature of the plea. The court explained to him, however, what leniency meant, and that he could inflict upon him any penalty up to death. Mason stated that defendant's mother employed him to represent defendant.

Upon defendant's stating that he desired to prosecute this appeal as a poor person, at the suggestion of the court it was understood that the State agreed to furnish a transcript of the record, which we assume was done.

The transcript of the proceedings on the day on which the jury was sworn and defendant pleaded guilty to the two charges develops that, upon the calling and swearing of forty-seven veniremen, defendant stated that he had offered to plead guilty, and offered to plead guilty at this time. The court refused to accept the plea of guilty. Defendant stated let the record show the defendant offers to make a judicial confession of his guilt in this case. (This was the case in which Alta ——— was the prosecuting witness). Thereupon from a panel of forty-seven veniremen, twelve jurors were selected by the State and defendant. After the State had made its opening statement to the jury, defendant's counsel said, "I offered to plead this man guilty to the court yesterday morning, and the court refused that plea. I now plead him guilty to you upon the State's opening statement and this information, and throw him on the mercy of the jury at this time, and I want the record to so show." Upon the court saying, "Proceed, gentlemen," counsel for defendant said, "Do you refuse to accept that plea, too?" The court said, "You have made no offer to the court." Counsel for defendant said, "I make the offer to the court to plead him guilty to the jury as set forth in the information, and throw him on the mercy of the jury." The court said, "Are you offering again to enter a plea of guilty to the court?" Counsel for defendant replied, "To the court and to the jury." The court said: "Now the court asks the attorneys whether they are offering to make this plea without reservation and without anyone attached to the court or any officer of the court having suggested or intimated any leniency? Whether they are making such plea without reservation and under those cir-

cumstances?'' Counsel for defendant: ''I am now offering to have the jury pass upon his punishment now. The jury has been impaneled and sworn in this case.

''THE COURT: You just offered to take a plea before the court. I want to know if that is without reservation.

''COUNSEL FOR DEFENDANT: There has been no intimation of any leniency whatever.

''THE COURT: All right, the court will accept the plea.''

Thereupon the court stated he would hear the testimony and directed the jury to retire to the jury room in charge of the deputy sheriff. After the jury was taken from the court room, the information was read to the defendant, the court asking, ''Do you fully understand what that means?'' Defendant replied, ''Yes, sir.'' The court then said, ''Are you guilty or not?'' and defendant replied, ''Guilty.''

Thereupon the information as to the charge in which Beulah —————— was the prosecuting witness was read to the defendant. The court then said to defendant, ''You understand what that means?'' and defendant replied, ''Yes, sir.'' The court said, ''And you understand that the court has offered no immunity of any kind or any consideration and that if you take a plea of guilty, it is without reservation. Do you understand that?'' Defendant replied, ''Yes, sir.''

Counsel for defendant then said, ''Ask him what he does. Do you understand that the court is offering you no leniency whatever? Do you understand that?'' The court said, ''No leniency offered in this case. Under those circumstances do you plead guilty or not guilty?'' and defendant replied, ''Guilty.'' The court said to defendant, ''You understand that you have a jury here impaneled to try this first case and the attorneys have offered to plead guilty, or have you plead guilty now and have done it heretofore and the court has promised nobody anything with reference to what he shall do, and that you are pleading guilty to a case, a charge of rape, in which the punishment goes to hanging. You understand that, do you?

''THE DEFENDANT: Yes, sir.

''THE COURT: And that nobody is promising you any immunity or leniency at all? Do you still plead guilty?

''THE DEFENDANT: Never offered me any which?

''THE COURT: You are submitting yourself to the court and taking whatever the court gives you in this case and the other case, is that what you understand?

''THE DEFENDANT: I plead guilty, but I can't get no real understanding out of it.

"THE COURT: You understand you are charged with rape?

"THE DEFENDANT: Yes, sir.

"THE COURT: You understand that the penalty is any number of years from two to life or hanging, you understand that, do you?

"THE DEFENDANT: Yes, sir.

"THE COURT: And that you are pleading guilty here without any reservation and the court gives you whatever sentence the court sees fit to give you, do you understand that?

"THE DEFENDANT: Yes, sir.

"THE COURT: You still plead guilty to both of these charges, this charge and the other, do you understand it?

"THE DEFENDANT: Yes, sir.

"THE COURT: You are pleading guilty?

"THE DEFENDANT: Yes, sir.

"THE COURT: All right. Just sit down. Now the court withholds sentence until he hears some testimony. There is no use having the jury present. The matter is disposed of. I would like to hear the girl's statement if she is here and make it as brief as possible to get the facts."

Subsequent to the court hearing testimony as to the facts, the following is shown: That defendant had been given an opportunity to see his mother and to consult friends and attorneys. That defendant was nineteen years of age, although the court stated defendant seemed older. Upon being given allocution in both cases separately, the court then separately pronounced the sentence of death as to each case.

The evidence taken by the court to determine the punishment warrants the finding that defendant and one Zannie Russie, negroes, conspired together to commit robbery and rape. On the night of June 27, 1927, Alta ———, fourteen years of age, a white girl, in the company of two young boys and a young girl, had been riding in an automobile in Kansas City. The other girl had been taken to her home. In taking Alta home, a tire becoming punctured, one of the boys alighted to fix it. Defendant and Zannie Russie came up at this juncture and, at the point of revolvers, one of the negroes compelled the two boys to flee down the street, while the other remained in charge of the girl and the machine. On the return of the first negro to the car, they forced the girl into it, driving to a secluded spot some distance from the main highway, where each ravished her against her will and consent, one leveling a revolver at her head while the other accomplished his purpose. It is unnecessary to relate the circumstances leading to their identification and arrest. It is sufficient to say that upon their arrest they confessed in writing the rapes on succeeding nights on Beulah and Alta. On

the hearing to determine the punishment, defendant and Russie were identified as the perpetrators of the crimes.

After defendant pleaded guilty, but immediately prior to defendant's sentence, Russie, who was sixteen years of age, upon a plea of guilty, was sentenced by the court, acting through the same jurist, to the penitentiary for life. Other pertinent facts, if any, will later be noted.

I. Section 3957, Revised Statutes 1919, charges the court *nisi* with the duty of assigning defendant, at his request, counsel, when he is without them to conduct his defense, and is unable to employ any, when about to be arraigned on a felony charge. The record shows that, on June 28, 1927, at the time of his arraignment and upon his request, two attorneys as counsel were appointed by the court to represent defendant. Based upon the premises that defendant did not request the court to assign him counsel, the error charged involves, on the part of the court, a violation of the statute mentioned in the appointment of counsel without first ascertaining the ability of defendant to employ counsel, and without affording him time to consult parents and friends to enable them to obtain counsel of their selection.

The record shows that it was upon defendant's request that the court assigned him counsel. Having requested the court to assign counsel, it will then be presumed that defendant was without counsel and that he lacked funds to employ them. Meeting defendant's charge that he was not afforded time to consult parents and friends to enable them to obtain counsel of their selection is the record that his mother employed counsel of his own race and color, who represented him in the proceedings and advised the plea of guilty, because he deemed the chance of obtaining a penitentiary sentence from the court superior to that of a jury. Even if it could be shown that their judgment was erroneous, defendant may not now complain of it, for an accused may not take a positive position and subsequently repudiate it, when he fails to obtain his hope that the court would sentence him to the penitentiary for life, especially since the record develops that hope was not held out to him by any word or action.

II. The second assignment of error is based on the assumption that defendant was ignorant and illiterate, and should have had the benefit of consultation with counsel. The third assignment is in close relation to it, charging the court erred in accepting the plea of guilty before ascertaining that such plea was made by a person of competent intelligence, freely and voluntarily, with full and complete knowl-

edge, appreciation and understanding of the nature and conse-
quences of such a plea.

The record refutes the charge that counsel for defendant did not
consult with him. Mason, a negro, of defendant's own race and
blood, representing him as co-counsel, stated he talked to him at
least twice prior to the trial. Defendant admits that Mason ques-
tioned him in the presence of his mother in the jail, and advised him
to plead guilty. We may assume that defendant at that time ad-
mitted facts establishing his guilt. The record further shows that
Attorney Alford, appointed by the court to represent defendant,
twice consulted him, stating that he confessed the crime to him. Hav-
ing confessed his guilt and admitted facts to his attorneys which
established his guilt, further consultations between defendant and
his attorneys would have availed nothing. There is no merit in the
contention.

It is not a question of whether defendant was ignorant and il-
literate, but whether he had understanding. That he understood his
acts from the beginning and that dire consequences attached there-
to, if apprehended, we have no doubt. When pursued by the police,
he fled in the car stolen from the boys, and was able to avoid ap-
prehension until the advent of blood hounds led to his arrest. A
reading of his testimony convinces us that his illiteracy did not af-
fect his intelligence and understanding, and that he comprehended
fully at the time that rape is in violation of law and a crime, as well
as comprehending fully the situation with respect to a jury and a
plea of guilty, including the authorized punishment. His testimony
shows that he knew he was subject to hanging upon his plea of guilty
and that he fully understood the situation. We may say in passing
that the record contains no evidence that covertly alludes to or sug-
gests an unsound mind. The inferred finding of the court as de-
veloped by the recorded judgment advises that it ascertained and
found on accepting the plea of guilty that defendant was of sound
mind and of competent intelligence, and that he pleaded guilty free-
ly, voluntarily and with full and complete knowledge, appreciation
and understanding of the nature and consequences of such plea. The
pertinent fact obtains that no inducement of any nature was held out
to him; on the other hand, he was warned that the plea was without
reservation or hope of mercy.

III. Section 3247, Revised Statutes 1919, as amended by Section
3247, Laws 1921, page 284a, prescribes ''that every person who shall

be convicted of rape, . . . shall suffer death, or be punished by imprisonment in the penitentiary for not less than two years, in the discretion of the jury." The pertinent portion of Section 4048, Revised Statutes 1919, prescribes: "And in all cases of judgment by confession, the court shall assess and declare the punishment, and render judgment accordingly." Defendant contends that the statutes are conflicting and repugnant and that by reason of the context Section 3247 takes precedence over Section 4048. The contention is tantamount to this, that, in all cases embraced within Section 3247, even though the defendant pleads guilty, the matter of punishment must be submitted to and fixed by the jury in its discretion. It will be noted, however, that Section 3247 uses the words "convicted of rape." In the sense in which it is used in Section 3247, the word "convicted" assumes that a trial was had to a jury, wherein they returned a verdict of guilty. The word "convicted" is commonly used merely to signify the finding of the jury that the accused is guilty. This is the well-settled meaning of the term as ordinarily used in constitutional and statutory provisions. [13 C. J. 903-5.] It is evident, therefore, that a well-defined distinction obtains between Sections 3247 and 4048 in that regard and that no conflict exists. If tried to a jury, the jury fixes the punishment in their discretion, if defendant is convicted by the verdict. If defendant pleads guilty, that is, assents to a judgment by confession, it is the duty of the court to assess and declare the judgment.

IV. The defendant contends that the action of the court in refusing to permit the jury to determine the punishment was a denial of due process of law, notwithstanding the accused failed to protest. In 12 Corpus Juris, page 1202, regarding the term, it is said: "Due process of law in a criminal case requires a law creating or defining the offense, a court of competent jurisdiction, accusation in due form, notice and opportunity to answer the charge, trial according to the settled course of judicial proceedings, and a right to be discharged unless found guilty." All of these things were present, except the trial by jury, and his plea of guilty dispensed with the necessity of a jury trial, except as we show in the succeeding paragraph as to the rape on Alta ———. Defendant's main contention in this regard is that Section 3247, Revised Statutes 1919, permits the jury only to fix the punishment, but as we have disposed of that contention in a preceding paragraph, we will not here amplify the discussion. [Ex parte Dusenberry, 97 Mo. 504, 11 S. W. 217.]

V. The defendant maintains that, after the jury was sworn, the court erred in accepting a plea of guilty and pronouncing sentence when in fact his plea was a plea of guilty to the court and the jury, and, inasmuch as the jury was discharged without returning a verdict and fixing the punishment, defendant has been in jeopardy and should be held acquitted.

The plea of guilty was directed to the court, which it accepted without protest on the part of defendant. The whole setting develops that defendant was cognizant that the court, after accepting the plea of guilty, intended to fix the punishment for the rape on Alta, to which course defendant not only made no protest but acquiesced. After the plea of guilty, no issue remained before the court, for there was nothing to try. Defendant judicially admitted guilt, that is, pleaded guilty to the court, and it became the duty of the court to fix the punishment, which was done. The plea of guilty to the court and to the jury was tantamount to a plea of guilty to the court, the words "and to the jury" failing to add to or take away from the force of the plea. There was no error in the procedure the court followed.

VI. Defendant finally charges that the court erred in pronouncing sentence and judgment that he be hanged for the rape of Beulah ———, on August 17, 1927, because immediately prior to the pronouncement of this sentence, the court had sentenced defendant to be hanged for the rape of Alta ———, on the same day.

Defendant asserts that the Missouri rule proscribes the sentencing of an accused as to a felony committed prior thereto, when he is under sentence for another felony. Certain cases are cited as apposite, but they have been overruled by State ex rel. v. Breuer, 304 Mo. 381, 264 S. W. 1. The mentioned case involves Section 3697, Revised Statutes 1919, and relates to penitentiary sentences, but its general purport and tenor is applicable to the facts here developed. The case mentioned also rules that the plea of former conviction, of which a plea of guilty is tantamount, must be preserved by a plea in bar saved in a bill of exceptions, for it is a matter of error and not of jurisdiction. Such plea in bar was not filed. The facts warrant the finding that, in the case in which Beulah ——— is the prosecuting witness, the defendant pleaded guilty to the court. In that case we perceive no error either in substance or form.

The defendant filed separate affidavits for appeal and perfected an appeal in each case, embracing the appeals, however, in one record. In view of the premises, the judgment in case No. C-8531, in the Circuit Court of Jackson County, relative to the rape on Alta ——— is affirmed. Also the judgment in case No. C-8532, in the

Circuit Court of Jackson County, relative to the rape on Beulah ———, is also affirmed. *Higbee* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur, and execution ordered July 6, 1928.