THE STATE v. JAMES WILLIAM KELLAR, *alias* CHARLES HAROLD CAMPBELL, Appellant.—55 S. W. (2d) 969.

Division Two, December 31, 1932.

*James S. McClellan* for appellant.

*Stratton Shartel,* Attorney-General, for respondent;. *Lieutellus Cunningham* of counsel.

COOLEY, C.—Defendant was charged by information in the Circuit Court of St. Louis County with the crime of murder in the first degree for the killing in said county of one Etta Sauer. Upon arraignment he entered a plea of not guilty. Later he withdrew that plea and entered a plea of guilty. The court assessed the death penalty. Defendant filed motion asking leave to withdraw his plea of guilty and plead not guilty, which after a hearing the court denied. Defendant was then duly sentenced to death upon his plea of guilty. There is no error in the record proper. Defendant appeals, charging error in the court's refusal to permit withdrawal of the plea of guilty. Such action of the court is the only matter presented for review on this appeal.

The information charges the murder to have been committed January 4, 1932, by striking and beating said Etta Sauer on the head and body with a piece of iron pipe. The information was filed January 16, 1932. Defendant was arraigned and entered a plea of not guilty on January 22, and the cause was set for trial for March 21. On February 29, defendant, through his attorney, made application to the court for the appointment of a commission of physicians or alienists to examine defendant as to his sanity. The court refused to make such appointment but on March 20, defendant was examined by two alienists, one chosen by himself and one by the State. This examination will be referred to later.

On March 21, the day the cause was set for trial, defendant being present with his attorney, the State answered ready for trial. Defendant thereupon, through his counsel, made known to the court that he desired to withdraw his plea of not guilty and enter a plea of guilty. A conference was then held in the judge's chambers between the judge, defendant's attorney and three attorneys representing the State. After this conference the judge resumed the bench, defendant withdrew his plea of not guilty and entered a plea of guilty as charged in the information. The court announced that the sentence "will be death by hanging," but did not then formally pronounce sentence. The court asked defendant if he had any reason

to show why sentence should not then be pronounced. Defendant's counsel replied that he thought ·there was justification for asking the clemency of the court. He stated further: ''By the purview of this case, Your Honor, it does look as though the defendant were guilty of premeditated willful murder. As I have already told Your Honor, there are circumstances in this case that I do believe suggest the use and the exercise of clemency by this court.'' The court replied: ''That may be taken up with the court later, at some future date. Sentence will be deferred.'' Sentence was thereupon deferred for two weeks.

On March 31, defendant filed his motion to withdraw his plea of guilty, which motion, omitting caption, is as follows:·

''Comes now James William Kellar, defendant in the above entitled cause and through his attorney moves this court to permit said defendant to withdraw his plea of guilty, heretofore entered herein, and to have a trial upon the issues, for the following reasons, to-wit: .

''1. That said defendant at the time he entered his plea of guilty was aware of the hostile public sentiment that had been directed against him by reason of the circumstances surrounding the crime, with the commission of which he is charged in the information, and believed he could not obtain a fair and impartial trial by reason of said public opinion and that acting under the misapprehension of the legal consequences attendant thereon he entered his plea of guilty in said cause.

''2. That said defendant was not informed by this court at the time said plea of guilty was entered of the legal consequences that might be attendant upon the entering of said plea.

''Wherefore, defendant prays this court to permit him to withdraw his plea of guilty heretofore entered herein and to stand trial on the issues of said cause.''

Said motion was heard by the court on April 2. Defendant did not testify nor present any affidavit. The only evidence offered by him in support of the motion was the testimony of his attorney, Mr McClellan, who testified in chief as follows:

''My name is James McClellan, and I am attorney for James Kellar in this case. On March 21, 1932, I was in the chambers of Judge McElhinney discussing the matter of entering a plea of guilty in this case. At no time was I advised that the probable or possible legal consequences of a plea of guilty would result in a sentence of death.''

On cross-examination he testified in substance: That he was a practicing lawyer, had been retained to· represent ·defendant in· this case and had represented him as his attorney for a month or more before the plea of guilty was entered; that on February· 9 ·(29?),

he had made application for the appointment of a commission to examine the defendant as to sanity, which was denied; that defendant was examined as to his sanity on March 20, 1932, by Dr. Unterburg, Chief of Staff of the Alexian Brothers Hospital and Dr. Francis Barnes, an alienist of St. Louis, in the presence of witness and others, the examination lasting about three hours, Dr. Unterburg having been selected by the witness and Dr. Barnes by the State. The State offered to prove by the witness that both doctors found the defendant to be sane. The defendant objected, his counsel stating: "I do not see any purpose in the admission of such testimony as that. I am not making any defense here on insanity whatever. I am asking to be allowed to withdraw the plea of guilty." The court sustained the objection.

Proceeding, witness testified that when the case was called on March 21, the State answered ready and witness, as defendant's attorney, informed the court that defendant desired to plead guilty; that he, McClellan, then knew that the punishment prescribed by statute for first degree murder was either life imprisonment or death by hanging; that the court thereupon said he would "take up the matter" later and that after the docket was called that morning a "consultation" took place in the judge's chambers, there being present Messrs. Ziercher, Noble and Castlen, counsel for the State, Mr. McClellan for the defendant, and the judge; that the judge did not then or at any time before the plea of guilty was entered, indicate what the sentence would be if such plea were entered; he was not asked to do so; that counsel for the State at the conference said the State intended to ask and would ask for the death penalty, and at all times maintained that attitude.

"Q. In the face of those things you had Mr. Kellar enter a plea of guilty in this case? A. That is right.

"Q. After the judge considered this matter in chambers by himself for an hour and a quarter, he assumed the bench again, did he not, at which time the defendant was arraigned, and at that time the defendant pleaded guilty as charged? A. Yes, sir. [Note. The defendant had been arraigned when he entered the original plea of not guilty.] This testimony followed:

"MR. MCCLELLAN, testifying: Mr. Ziercher, and if the Court please, I notice in the first statement I made I say at 'no time advised;' I didn't mean you had not advised me, but I meant the court had not advised me, so I would like, with your permission, to amend my original statement.

"Mr. ZIERCHER: The court had not advised . . . .

"The WITNESS: As to the possible legal consequences.

"Mr. ZIERCHER: You knew that sentence might be fixed at death, did you not?

"The WITNESS: Yes, Mr. Ziercher, I will again ask your permission to amend that original statement; it is not accurate and it is not what I mean. I stated originally I was at no time advised what the probable legal consequences might be in the chambers, I wish to amend that, that I was at no time advised by the court of the possible legal consequences, and that is what I intended to state.

"Mr. ZIERCHER: I will let the court rule on that.

"By the COURT: Q. Mr. McClellan, what did the court advise you when you spoke about withdrawing the plea of not guilty, and entering a plea of guilty? What did the court state to you? A. As I recall that, part of the words you used were, it was putting a large or heavy burden on you.

"Q. I will ask you, if the court did not state to you, on several occasions, both before and after the reading an alleged confession in this case, that the court would rather have a jury pass on the matter? A. You stated that to me; yes, sir."

The foregoing was all the evidence offered except that the State offered and read the record entries in the cause. The record entry on March 21, reads:

"On March 21, 1932, defendant being in court, with his attorney, withdraws his former plea of not guilty and pleads guilty as charged. Punishment assessed at death by hanging. Allocution granted defendant. Sentence deferred until April 4, 1932."

In argument to the court following the introduction of the evidence on the motion, Mr. Ziercher said that he told defendant's attorney when the latter expressed his intention of pleading guilty that it was placing a terrible burden upon the shoulders of the court and that Mr. McClellan replied: "I am going to enter a plea of guilty regardless of that fact." Mr. McClellan did not deny the statement.

At the close of the hearing the court took the matter under advisement and two days later, on April 4, overruled the motion to withdraw the plea of guilty and formally sentenced defendant. We have set out the facts at length because of the gravity of the case and defendant's contention that the court abused its discretion in refusing to permit withdrawal of the plea of guilty.

I.   Defendant contends there was no final judgment rendered until sentence was formally pronounced on April 4, and that until such final judgment was given he had the absolute legal right to withdraw his plea of guilty; in which case it would follow that the court erred in denying the right.

■■   We agree there was no final judgment until defendant was sentenced, which the record shows was on April 4. [See State v. Kelley, 206 Mo. 685, 105 S. W. 606, 12 Ann. Cas. 681; 16 C. J. p.

1266, sec. 3000.] But we do not agree with the further contention that until sentence was thus formally pronounced defendant was entitled as a matter of right to withdraw his plea.

Defendant cites on this point State v. Reppley, 278 Mo. 333, 213 S. W. 477; five decisions of the Georgia Court of Appeals; Alexander v. State, 69 Tex. Cr. Rep. 23, 152 S. W. 436; State v. Hortman, 122 Iowa, 104, 97 N. W. 981, and Williams v. Commonwealth, 25 Ky. Law Rep. 1009, 80 S. W. 173.

The Reppley case does not sustain defendant's contention. The Georgia cases are based upon a statute expressly providing that at any time before judgment is pronounced the prisoner, if he has pleaded guilty, may withdraw such plea and plead not guilty. See Griffin v. State, 12 Ga. App. 615, 77 S. E. 1080; Woodward v. State, 13 Ga. App. 130, 78 S. E. 1009, where in a dissenting opinion the statute is quoted. The Georgia court holds that the statute allows the defendant, as a matter of right, to withdraw his plea of guilty at any time before judgment. [See Griffin and Woodward cases, supra; also, Bearden v. State, 13 Ga. App. 264, 79 S. E. 79; Nobles v. State, 17 Ga. App. 382, 86 S. E. 1073.]

In the Griffin case the court said the provision of the statute "before judgment is pronounced" means before the judge has announced what sentence is to be imposed; "otherwise a prisoner would be permitted to speculate upon his punishment, and, if severer than he anticipated, withdraw his plea and take the chances of an acquittal." The court further said that after the defendant has been officially informed by the court what his punishment will be it is too late to withdraw his plea as a matter of right, and the withdrawal then rests in the judicial discretion of the court.

In the Texas case cited it is held that where the accused has pleaded guilty he is entitled at any time before retirement of the jury to withdraw the plea and require the state to prove him guilty. No authorities are cited. The Texas statute requires, where there is latitude in the permissible punishment, that the jury hear evidence and fix the punishment on a plea of guilty. That case is hardly in point.

In State v. Hortman, supra, the facts were rather similar to those of the instant case. The decision does not support defendant's contention, however, because, like the Georgia cases, it is based upon a statute which the court construed to be mandatory. The statute reads: "At any time before judgment the court may permit the plea of guilty to be withdrawn, and other plea or pleas substituted." Following its prior decisions the court construed "may" as used in the statute to mean the same as "must," and held therefore that the statute gave the defendant the absolute right to withdraw the plea before judgment.

The Kentucky case cited does not support defendant's contention. It appears from the opinion that Kentucky had a statute similar to that of Iowa but which the Kentucky court seemingly treated as permissive rather than mandatory. However, the holding that the lower court should have permitted withdrawal of the plea of guilty was because of circumstances occurring prior to entry of the plea which had misled the defendant and induced him to plead guilty.

We have in this State no statute giving a defendant who has entered a plea of guilty in a criminal case the right to withdraw such plea before judgment.

"In the absence of statute, or of peculiar circumstances, a defendant in a criminal case is not entitled as a matter of right, to withdraw a plea duly made to an indictment or information, in order that he may file another plea or interpose objections to the proceedings which should have been presented before the plea; the matter is within the sound discretion of the trial court." [16 C. J. p. 396, sec. 728.]

This rule applies to pleas of guilty. [16 C. J. p. 397, sec. 730.] The authorities generally sustain the rule stated in Corpus Juris. Many of the cases cited in the notes to Section 728, supra, are cases wherein pleas of guilty had been entered. [See, also, to the same effect, 2 Bishop's New Crim. Proced. (2 Ed.) secs. 747, 798.]

II. Defendant further contends that even though permission to withdraw the plea of guilty and substitute one of not guilty be held, as we hold it, to rest in the judicial discretion of the trial court, the court abused its discretion and erred in refusing to permit the withdrawal.

The trial court's action in refusing to permit withdrawal of a plea of guilty is reviewable and abuse of discretion in refusing to allow the withdrawal is reversible error. The rule, sustained by numerous authorities, is thus stated in 16 Corpus Juris, section 730, page 398:

"The withdrawal of the plea of guilty should not be denied in any case where it is in the least evident that the ends of justice will be subserved by permitting not guilty to be pleaded in its place. Therefore, the court ordinarily will permit a plea of guilty to be withdrawn if it fairly appears that defendant was ignorant of his rights and of the consequences of his act, or was influenced unduly and improperly either by hope or fear in the making of it, or if it appears that the plea was entered under some mistake or misapprehension. Ordinarily it will not be granted, however, where the plea was entered voluntarily without any undue influence, or where no reason whatever was assigned for the change. So the mere fact that defendant, knowing his rights and the consequences of his act, hoped or believed,

or was led by his counsel to hope or to believe, that by pleading guilty he would receive a shorter sentence or a milder punishment than that which would fall to his lot after trial and conviction by a jury, presents no ground for the exercise of the court's discretion. And there is no abuse of discretion in refusing permission to withdraw a plea of guilty where defendant's sole. complaint is that, had he anticipated the severity of the consequent punishment, he would not have pleaded guilty.''

In State v. Stephens, 71 Mo. 535; State v. Kring, 71 Mo. 551; State v. Dale, 282 Mo. 663, 222 S. W. 763, and State v. Meyer (Mo.), 222 S. W. 765, it was held that the trial court had abused its discretion in refusing to permit withdrawal of a plea of guilty. But, as pointed out in State v. Rogers (Mo.), 285 S. W. 976, 978, ''in each of said cases something had been done or said by the prosecuting attorney or the trial judge to mislead the defendants into entering pleas of guilty.''

In State v. Richardson, 98 Mo. 564, 12 S. W. 245, the defendant was not misled by anything said or done by the prosecuting officer or the judge and his request for leave to withdraw his plea of guilty was held to have been properly denied.

In State v. Sublett, 318 Mo. 1142, 4 S. W. (2d) 463, the defendants pleaded guilty to robbery and were each sentenced to twenty-five years' imprisonment. On motion to withdraw the plea there was some evidence that the jailer or some of the arresting officers had told the defendants they would probably get lighter sentences on a plea of guilty than at the hands of a jury but no promises or inducements had been held out by the judge or anyone authorized to speak for the prosecuting attorney's office. The guilt of the defendants was not denied. This court said: ''No doubt they were disappointed and shocked at the punishment imposed by the trial judge, which they regarded as extremely severe. That is the sum and substance of their grievance, when the record is carefully scrutinized.'' The trial court's action in refusing to permit withdrawal of the plea was affirmed.

The same conclusion was reached in State v. Jonagan, 311 Mo. 540, 278 S. W. 775, in which the defendant's attorney had told him he might be paroled if he pleaded guilty but there had been no promises or inducements made by the judge or prosecuting attorney calculated to mislead the defendant.

In State v. Williams, 320 Mo. 296, 6 S. W. (2d) 915, the defendant entered pleas of guilty to two charges of rape. No leniency had been offered him and no promises made him by the judge or by the officers. representing the State. The court told him no leniency or immunity would be granted and explained to him that if he pleaded guilty the court might fix his punishment at from two years to life imprisonment or at death by hanging. With that knowledge he en-

tered the pleas and was sentenced to death. His attorney had told him that if he pleaded guilty he (the attorney) did not think the court would hang him but would give him a penitentiary sentence; that he would have a better chance before the court than before a jury; that he (the attorney) thought a jury would hang him. The trial court overruled the defendant's motion to withdraw his pleas of guilty. This court held that the defendant had entered his pleas freely and voluntarily and with full knowledge and appreciation of the possible consequences thereof and affirmed the judgments.

In People v. Miller, 114 Cal. 10, 45 Pac. 986, the defendant pleaded guilty to a charge of murder and was sentenced to death. The trial court denied his motion to withdraw the plea. On appeal he contended the court had abused its discretion. In affirming the judgment the Supreme Court said:

"The law seeks no unfair advantage over a defendant, but is watchful to see that the proceedings under which his life or liberty is at stake shall be fairly and impartially conducted. It holds in contemplation his natural distress, and is considerate in viewing the motives which may influence him to take one or another course. Therefore, it will permit a plea of guilty to be withdrawn if it fairly appears that defendant was in ignorance of his rights and of the consequences of his act, or was unduly and improperly influenced either by hope or fear in the making of it. But the mere fact that a defendant, knowing his rights and the consequences of his act, hoped, or believed, or was led by his counsel to hope or believe, that he would receive a shorter sentence or a milder punishment by pleading guilty than that which would fall to his lot after trial and conviction by jury, presents no ground for the exercise of this liberal discretion. [People v. Lennox, 67 Cal. 113.] To hold that it did would be equivalent to saying that a defendant might speculate upon the supposed clemency of a judge, with the right to retract if, at any time before sentence, he began to think that his expectation would not be realized."

State v. Ferranto (Ohio), 148 N. E. 362, is a similar case. The defendant was charged with murder in the first degree, pleaded guilty to "general homicide" and was given the death penalty. The trial court refused to set aside the plea and its judgment was affirmed. The Supreme Court said that the defendant's motive in changing his plea of not guilty to guilty "may have been the hope that the degree of crime and penalty fixed therefor would be less if fixed by the court than by the jury, but the fact that such belief proved to be unfounded is not ground for finding that there was an abuse of discretion on the part of the trial judge when all the evidence in the case would have supported such a finding had it been returned by a jury." It seems that in Ohio on a plea of guilty of

"general homicide" the court hears evidence and determines the degree of the crime.

In State v. Stevenson, 67 W. Va. 553, 68 S. E. 286, the defendant pleaded guilty to murder in the first degree and received the death penalty. On motion to withdraw the plea he showed that his attorney, knowing the temperament of the then presiding special judge respecting the death penalty, had advised the defendant that he, the attorney, did not think said judge would inflict that penalty. But no promises or representations were made to defendant by the judge or prosecuting attorney. It appears that before sentence the regular judge returned, resumed the bench and pronounced the sentence. The Supreme Court said that in pleading guilty the defendant "was not misled as to anything respecting the question of his guilt. He had no intimation from the court as to what the punishment would be. His action, according to his own showing, was based upon a mere surmise as to what punishment the court would inflict." In sustaining the trial court's refusal to permit withdrawal of the plea the court said:

"In order to deprive the court of its discretionary power to refuse leave to withdraw a plea of guilty, it seems to be necessary to show that the prisoner was uninformed or misadvised as to the nature of the charge against him and the effect of his plea, or induced by threats or promises to confess the crime. This mistake, misapprehension, promise or inducement may relate to the manner and extent of punishment, but it must appear that something of this nature induced the plea."

For other cases of like tenor see People v. Manriquez (Cal.), 206 Pac. 63, 20 A. L. R. 1441 (murder in first degree with death penalty); People v. Bostic, 167 Cal. 754, 141 Pac. 380 (murder in first degree with death penalty); State v. Cimini, 53 Wash. 268, 101 Pac. 891; Griffin v. State, 12 Ga. App. 615, supra; Brown v. State (Fla.), 109 So. 627; Mounts v. Commonwealth, 89 Ky. 274, 12 S. W. 311 (murder in first degree, death penalty); State v. Wilmot, 95 Wash. 326, 163 Pac. 742; Mahoney v. State, 197 Ind. 335 (mere disappointment in assessed penalty not sufficient to authorize withdrawal). See also for collation of authorities on the subject the extensive annotations to People v. Manriquez, 20 A. L. R. 1441, 1445 et seq., and annotations to Krolage v. People, 8 Ann. Cas. 235, 237, and Pope v. State, 16 Ann. Cas. 972.

In Krolage v. People, supra, 224 Ill. 456, 79 N. E. 570, 8 Ann. Cas. 235, Mullen v. State (Okla.), 230 Pac. 285, and other cases cited by defendant there were present circumstances tending to influence the defendant and induce the plea of guilty not found in the cases we have reviewed above and not existing in the case before us.

In the instant case there is and can be no contention that defendant was misled by anything said or done by the judge or by the

prosecuting officers. It is not claimed that he is not guilty of murder in the first degree as charged. His counsel in his presence in open court virtually stated to the court that the evidence would so show and the plea of guilty admits such guilt. He was represented by counsel who for over a month had had the case in charge. He was warned that the State would ask the death penalty and he knew that penalty might be inflicted, for it cannot be conceived that his counsel did not advise him of the law and of what occurred at the conference with the judge above referred to. No intimation is made that his counsel did not do his duty in that respect or that defendant himself did not fully understand that he might receive the death penalty. Neither the judge nor any one representing or purporting to represent the State intimated to defendant, or to his counsel, in any way that he might receive a lighter sentence if he pleaded guilty than he could expect from a jury. Nor, so far as the evidence shows, did any person so intimate to him. That he and his counsel believed a jury would likely assess the death penalty and hoped the court would not do so may well be believed. But the disappointment of that hope alone, when the hope had not been inspired by anything said or done by the judge or those in charge of the prosecution, cannot be allowed as just ground for holding the trial court guilty of abuse of discretion in refusing to permit withdrawal of the plea.

The real point of defendant's complaint, as shown by his motion to withdraw the plea and the testimony of his attorney in support of it, appears to be, not that he did not know and appreciate what the consequences of a plea of guilty might be, but that the court did not tell him or at least sufficiently intimate that the death penalty *would be imposed* if he pleaded guilty. The court was under no obligation or duty to inform defendant in advance what sentence would be imposed. The judge did tell defendant's attorney that he would rather have a jury pass upon the question and that a plea of guilty would throw upon him a heavy burden. That could only have meant, as defendant and his counsel knew, the onerous duty of deciding between the death penalty and life imprisonment, for only one or the other of those penalties was possible. That was warning enough, if any were needed, to indicate that the judge had not excluded the death penalty from his contemplation. With knowledge of all the facts and the consequences that might follow his plea of guilty, with no inducement of hope or fear from those in authority, with knowledge that the judge had read his written confession, which is not in this record but which we may assume showed his guilt, and knowing also that for over an hour the judge, alone in his chambers, must have been considering the question of punishment, the only question for consideration if a plea of guilty were entered, the defendant still chose to risk his fate on a plea of guilty to the court rather than take

the chance of what a jury might give him. Doubtless he was disappointed and shocked by the punishment assessed and of course when that decision was announced he naturally wished to retract his plea. He could not fare worse and might fare better at the hands of a jury. But if, in the circumstances of this case, we were to hold that the trial court abused its discretion, it would simply mean that in a criminal case the defendant may enter a plea of guilty, without any promise or inducement being held out to him by the court or the officers representing the State and without having been in anywise misled, speculating upon what punishment the court may inflict, and then, if disappointed in his hope of clemency, may withdraw his plea of guilty and demand trial to a jury on the ground that the court abused its discretion by accepting his plea of guilty without first informing him what punishment would be assessed. And that would be to hold in effect that it is the duty of the court before accepting a plea of guilty to inform the defendant not only what punishment *may* be inflicted under the law but which of the permissible penalties *will* be imposed. We know of no statute or principle of law making it the duty of the court so to inform a defendant or giving a defendant in a criminal case the right to expect the court so to do.

We are satisfied the trial court felt it was a solemn responsibility and a distressing duty to assess the death penalty in this case. It is not a pleasant duty to us to affirm that action. But we cannot do otherwise. The statute fixes the punishment for murder in the first degree, of which defendant is confessedly guilty, at either death or life imprisonment. Upon a plea of guilty it is the duty of the trial court to determine which of those penalties shall be assessed. [Sec. 3704, R. S. 1929; State v. Williams, supra.] Unless the court has abused its discretion we have no authority to interfere. We can see no abuse of discretion on the part of the trial court in this case. It follows that the judgment of the circuit court must be and it is affirmed. *Westhues* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All concur. Date of execution set for Friday, January 20, 1933.