STATE of Missouri, Appellant,

v.

Anderson PARKER, Respondent.

Nos. 51972–51974.

Supreme Court of Missouri,
En Banc.

April 10, 1967.

Norman H. Anderson, Atty. Gen., James E. Darst, First Asst. Circuit Atty., St. Louis, John H. Denman, Asst. Atty. Gen., Jefferson City, for appellant.

Bruce Nangle, St. Louis, for respondent.

HENLEY, Judge.

The State appeals from judgments of the circuit court of the City of St. Louis entered January 20, 1966, setting aside judgments of conviction of respondent entered November 1, 1961, in three felony cases. The three appeals were consolidated for briefing, hearing and argument by order of this court; one opinion will decide the three. The respondent will be referred to as defendant.

By three indictments filed July 20, 1961, defendant was charged as follows: in case number 1074–J, with robbery in the first degree of Harold Siefert on June 30, 1961, section 560.120 (all references to statutes are to RSMo 1959 and V.A.M.S.); in case number 1075–J, with assault of Thomas Crowe with intent to kill with malice aforethought on the same day, June 30, 1961; in case number 1076–J, with assault of Edward Harper with intent to kill with malice aforethought on the same day, section 559.180. The three men named above, Siefert, Crowe and Harper, were, on June 30, 1961, members of the St. Louis Metropolitan Police Department. Each indictment also charged that defendant had been convicted of four prior felonies and sentenced and imprisoned therefor. Section 556.280.

On November 1, 1961, the robbery case (No. 1074–J) came on for trial in Division Twelve before a jury and the Honorable Ivan Lee Holt, Jr., judge. Defendant was represented by experienced able counsel. At the end of a recess near the close of the day, after the state had obviously made a strong submissible case, defendant announced he would withdraw his plea of not guilty and enter a plea of guilty to this charge and the charges in cases numbered 1075–J and 1076–J. Evidence in the robbery case will be referred to later. The court accepted the pleas of guilty, sentencing defendant to imprisonment for thirty years in the robbery case and thirty years' imprisonment in each of the assault cases, the sentences to run concurrently.

On October 20, 1964, while serving his sentences in the penitentiary, defendant filed the instant motion to set aside the judgments of conviction and permit him to withdraw his pleas of guilty. Criminal Rule 27.25 (all references to rules are to Rules of the Supreme Court of Missouri and V.A.M.R.). The motion was heard on February 16, 1965, by the Honorable Alvin J. McFarland, judge. Defendant appeared in person and was represented by counsel of his own choice. Thereafter, on January 20, 1966, the court sustained the motion and set aside the judgments, from which orders the state has appealed. The evidence in support of the allegations of the motion, mostly by way of depositions, will be referred to later.

The trial court having set aside final judgments of conviction, the state is entitled to appeal, Criminal Rule 28.04(b) and §§ 547.200 and 547.210, and this court has jurisdiction, because convictions of felonies are involved. Article V, § 3, Constitution of Missouri, V.A.M.S., State v. Skaggs, Mo., 248 S.W.2d 635, 636[2].

The evidence in the robbery case supports a finding of the following facts. On June 30, 1961, the date of the robbery, Patrolman Harold Siefert, Sergeant Edward Harper and Detective Thomas Crowe were on duty with the Operative Deployment Section, better known as the Decoy Squad. That evening, at about nine o'clock, they and other members of the Squad were patroling an area of high crime incidence in the city, described as being between Franklin avenue on the south and Carr

on the north, Sixth street on the east and Tenth on the west. Their method of patroling the area was for some of the officers to walk assigned streets in plain clothes equipped with miniature radio equipment by which they could communicate with each other and other members of the squad in nearby unmarked like-equipped police cars, commonly referred to as police cruisers. In addition to these officers the squad consisted of Detective Norman Kleifisch, Detective John Housley and Patrolwoman Phoebe Blunk. The evening was still light enough at the time of the robbery and subsequent events to distinguish personal features, according to Patrolwoman Blunk.

The patrol began at Sixth street, on the east, with three officers starting at the same time from that point to walk west toward Tenth on separate avenues; Patrolman Siefert was walking the south side of Carr; Detective Housley was walking Cole, the next avenue south of Carr; Detective Kleifisch was walking Franklin, the next avenue south of Cole. Sergeant Harper, supervisor of the squad, followed in a police cruiser at some distance behind the walking officers. Detective Crowe and Patrolwoman Blunk were in a police cruiser moving west, ahead of the walking officers. The walking officers were required to maintain approximately the same pace, stop at each intersection to ascertain whether the others had reached that point on their avenues, and maintain radio contact with each other and the two cruisers.

When Siefert reached the corner of Ninth and Carr he discovered he was ahead of his partners walking Cole and Franklin; to kill time he walked across Ninth and stepped into a nearby outside telephone booth, pretending to look for a number in the directory. He was immediately attacked from behind by defendant and another negro man. He was struck on the head, knocked down, and, while fighting back, was pulled out of the booth, knocked down to the sidewalk, and viciously mauled, kicked and beaten to the point of bare consciousness.

His clothes were torn to shreds as the two negroes were taking his wallet, wristwatch, service revolver and handcuffs. As the handcuffs were taken one of the men exclaimed "this guy is a cop," and they broke and ran west on Carr toward a nearby alley where defendant and his partner separated, defendant heading south into the alley leading to Cole. During the affray Siefert managed to activate his transmitter and call for help. Police cruisers converged on the area, and as Siefert was getting in Sergeant Harper's cruiser they saw defendant, in a yellow shirt, turn into the alley. They followed defendant through the alley to Cole, and east on Cole to Ninth where defendant turned north back towards Carr into the arms, so to speak, of Detective Crowe. A struggle ensued between defendant and Crowe during which the officer was shot in the knee and, as defendant was escaping, he was shot in the back by Crowe. As he escaped Crowe other officers took up the pursuit, during which several shots were exchanged between defendant and the pursuing officers. Defendant outdistanced the officers and ran into a nearby housing development, the Cochran apartments; there he was captured and Siefert's service revolver with three spent cartridges taken from him. Patrolwoman Blunk testified she was within fifteen feet of defendant and Detective Crowe during Crowe's attempt to subdue and arrest defendant; she saw Crowe, shot, drop to the street; she positively identified defendant at the trial. Detective Harper testified that as he pursued defendant beyond Crowe defendant fired at him.

The substance of the allegations of defendant's motion is that he is innocent of the three charges; that since his incarceration in the penitentiary he has received information that evidence exists which will prove his innocence, evidence withheld from him by the state in violation of his constitutional rights. The evidence to which he refers is stated briefly in an affidavit of his trial attorney, attached to the motion. The affidavit states, in substance,

that prior to and at the time of the robbery trial and pleas of guilty counsel and defendant were led to believe that the bullet which struck Detective Crowe had been fired by defendant. The affidavit implies that the fact is that it had been determined by the state before trial that the bullet extracted from Crowe's knee had not been fired by defendant, but had been fired by a police officer; that the state had this information before and during the trial, but withheld it from defendant and his counsel.

There is no need to relate in detail the testimony of all the fourteen witnesses called to the stand by defendant at the hearing on his motion; much of it was not particularly pertinent to the issues. No evidence was offered by the state. Those testifying included the judge who presided at the robbery trial; the attorneys representing the respective parties in that trial; the circuit attorney; all police officers of the Decoy Squad and other officers in any way involved in the occurrence of June 30, 1961, and their superior officers, including the Chief of Police; and officers and technicians of the police department laboratory who made ballistic tests of the bullet removed from Crowe's knee, Officer Siefert's revolver found in defendant's possession at arrest, and all other police weapons fired during this general melee. This evidence showed conclusively that the bullet which struck Crowe while he was struggling with and trying to apprehend defendant was not fired by defendant from Siefert's revolver, as had been first assumed, but was fired by Sergeant Harper from his revolver. This information was in the possession of the police department, and known to the commanding officer of the Decoy Squad and all of his superiors including the Chief of Police, not later than September before defendant pleaded guilty on November 1, to the charge of assault of Officer Crowe and the other two charges. It is not clear as to when this information was conveyed to the Circuit Attorney's office and the state's trial attorney, but it would be reasonable to conclude it was known by them before the pleas of guilty were entered. It was not conveyed to the judge who accepted the pleas, or at least he had no recollection of having received this information.

James J. Rankin, trial counsel for defendant in the three cases, testified that he made no effort to determine whether ballistic tests had been made or what such tests would show; that no one informed him that ballistic tests had been made and the results, so he assumed the state would be able to prove in the Crowe assault case that defendant had fired the shot wounding Crowe; that he did not know information existed that defendant had not shot Crowe; that had he known the results of the tests, he would have questioned whether the state could make a case in either of the assault charges, and his advice to defendant " * * * may have [been] * * * altered, * * * depending upon the prospective disposition * * * he thought * * * [he] could make of [the assault] cases, either by pleading him guilty or by trial * * * ;" that the first knowledge he had that such tests had been made, and their results, came through newspaper articles in 1964. He further testified that the fact the state had made a very strong case on the robbery charge influenced him to advise defendant to plead guilty to that charge; that he had been negotiating for some time with the Circuit Attorney's office for a satisfactory disposition of these cases on a plea of guilty and " * * * wouldn't have considered disposition of one case with the prospect of having to go to trial in either of the other two * * * ;" that other factors influencing his advice to defendant to plead guilty to the three charges was the fact that he was charged with four prior felony convictions in each, and the fact that each was a very serious charge, and he (defendant) would not be " * * * in a very good position [with four prior felony convictions] to face a jury unless he had a pretty good defense in any one or all of the cases." He further testified that the sentences imposed were not in ex-

cess of what the defendant had agreed to take; that he was sure defendant knew what he was doing in pleading guilty to all three charges.

Daniel P. Reardon, Jr., the circuit attorney, testified that negotiations between defendant's attorney and the state's trial attorney for disposition of the cases by a plea of guilty had been continuous from " * * * the very outset * * * ;" that the state's recommendation to the court had been a sentence of thirty-five years, prior to beginning trial of the robbery case; that he received information during the morning of the second day of the robbery trial that the bullet which struck Crowe was from Sergeant Harper's weapon; that he immediately informed the judge of this fact and offered to reduce the state's recommendation to twenty-five years should the defendant plead guilty; that Judge Holt would not agree to twenty-five year sentences, but said he would sentence defendant to thirty years on pleas of guilty; that it was agreed between the state and defense counsel that upon defendant's plea of guilty the court would impose a sentence of thirty years in each of the three cases with the sentences to run concurrently.

Appellant contends that the court erred in sustaining defendant's motion to withdraw his plea of guilty to the charge of robbery and to the charge of assault on Sergeant Harper, because the only reason stated for withdrawing the pleas has no application to these two charges; that the motion does not allege facts which, if true, would affect the judgments in these two cases; and, that the evidence does not show that injustice would result in these cases if the pleas were not permitted to be withdrawn. Appellant also contends that the court erred in sustaining the motion as to the charge of assault on Detective Crowe, because there has been no showing injustice has resulted from the state's failure to inform defendant that it was Harper's bullet, not defendant's, which struck Crowe; that defendant is, in fact, guilty of an assault on Crowe, as charged, because the evidence shows defendant shot at Crowe, and it makes no difference that it was not defendant's bullet which struck the officer.

Respondent contends that whether or not judgments of conviction should be set aside, after sentence, to correct manifest injustice is within the sound discretion of the trial court; that injustice appears from the fact that the state withheld from defendant and his counsel information in its possession that defendant was not guilty of assault with intent to kill officer Crowe by shooting; that this proof supports the action of the court in setting aside his conviction of assault on Crowe; therefore, the court did not abuse its discretion. He also contends that the judgments on pleas of guilty in the other cases are so closely related to and infected by the same cause they also were properly set aside.

■ By the provisions of Criminal Rule 27.25 the withdrawal of a plea of guilty is permissible after sentence, when, in the discretion of the trial judge, such withdrawal is necessary to correct manifest injustice; and the action of the judge on a motion to withdraw a guilty plea will not be overthrown, except for an abuse of judicial discretion. State v. Skaggs, Mo., 248 S.W.2d 635, 636[1, 2]; State v. Reynolds, 355 Mo. 1013, 199 S.W.2d 399, 402[1]. Most of the authorities cited by the parties, and those we find by independent research, present cases wherein the defendant has appealed claiming an abuse of judicial discretion in refusing to permit him to withdraw his plea of guilty. Here we are presented with the reverse of the situation usually found, but those authorities, and the well-defined guidelines they have established, are, nevertheless, applicable to the facts presented in this case.

■ A plea of guilty in open court is a solemn confession of guilt, but, like a confession out of court, should be received with caution. The plea should not be accepted by the court unless it is voluntarily

and understandingly made. "If the defendant should be misled or be induced to plead guilty by fraud or mistake, by misapprehension, fear, persuasion, or the holding out of hopes which prove to be false or ill founded, he should be permitted to withdraw his plea. The law favors a trial on its merits." State v. Reynolds, 355 Mo. 1013, 199 S.W.2d 399, 402–403[1–7], and cases there cited; State v. Kellar, 332 Mo. 62, 55 S.W.2d 969, 972[3–5]. A defendant is not entitled as a matter of right to withdraw his plea after sentence; whether he may do so rests within the sound discretion of the court. State v. Reynolds, supra; United States v. Denniston, 89 F.2d 696, 698[5].

■ A motion which has for its purpose the withdrawal of a plea of guilty after sentence must allege facts, not conclusions, showing that the plea was not voluntarily and understandingly made, and should state how, wherein and by what fraud, mistake, misapprehension, fear, persuasion, or false or ill-founded hopes held out to him he was misled or induced to plead guilty. State v. Kellar, 332 Mo. 62, 55 S.W.2d 969, 972. The movant should at the very least allege that he is innocent and has a meritorious defense to the offense charged. Watts v. United States, 107 U.S.App.D.C. 367, 278 F.2d 247, 251 [5]; United States v. Denniston, 2 Cir., 89 F.2d 696, 698[6], 110 A.L.R. 1296. And he has the burden of proving the facts alleged. State v. Kellar, supra; State v. Cochran, 332 Mo. 742, 60 S.W.2d 1; State v. Reynolds, supra; United States v. Shneer, 3 Cir., 194 F.2d 598, 600[2]; Watts v. United States, supra, 278 F.2d l. c. 251[5].

The procedure provided by our Criminal Rule 27.25 is appropriate only in extraordinary cases;[1] after sentence, it is available only "to correct manifest injustice."

■ We consider first whether the allegations of defendant's motion meet these requirements and whether the evidence adduced at the hearing warrants any relief under Criminal Rule 27.25 in the robbery case (No. 1074–J) and the Harper assault case (No. 1076–J). The motion alleges the bare conclusion that he is innocent of all three charges. The only factual allegations in his motion, and its supporting affidavit, which may be said to state grounds for impeaching a judgment relate solely to the Crowe assault case (No. 1075–J), not to the robbery and Harper assault cases. Nor does the evidence support the trial court's order setting aside the latter judgments; the evidence relates solely to the alleged grounds for setting aside the judgment in the Crowe assault case. There is no pleading or proof that defendant has a meritorious defense in the robbery and Harper assault cases, nor pleading or proof that his pleas of guilty in those two cases were not voluntarily and understandingly entered.

The evidence is that defendant shot at Sergeant Harper during a running gun battle after the robbery of Patrolman Siefert; the evidence is that defendant robbed Siefert, taking his gun and putting it to the latter's head during that affray. This evidence would support verdicts of guilty on each of those charges. Defendant does not deny these facts or claim that he has a defense in either of these cases. Instead, he makes the technical and rather vague contention that these two pleas and judgments are somehow tainted with the alleged injustice resulting from the judgment in the Crowe case. We find no merit in this contention. Although the pleas in the three cases were entered on the same occasion they represented separate charges each resting on its own bottom.

Defendant had the advantage of hearing practically all of the state's evidence pertaining to the charges of robbery and assaults; he had experienced counsel, who, after hearing this evidence, advised him to

1. The rule is the same as Rule 32(d), Federal Rules of Criminal Procedure, 18 U.S.C. See United States v. Semel, 4 Cir., 347 F.2d 228, 229 [1].

plead guilty and accept the concurrent sentences counsel no doubt had reason to believe the court would impose; he entered pleas of guilty after extended negotiations between his counsel and counsel for the state to reach agreement on the punishment to be recommended should he plead guilty, and after the state had reduced its first recommendation. There is no doubt that his pleas of guilty to the robbery charge and to the charge of assault on Sergeant Harper were voluntarily made. There is no doubt that these pleas were entered with a full understanding of the *meaning* of each charge, and what acts amount to being *guilty* of each charge, and the *consequences* of pleading guilty thereto. His claim of "manifest injustice" is utterly incompatible with the record.

If the evidence were conflicting as to whether these two pleas of guilty were voluntarily and understandingly entered, we should observe the deference due the trial judge who heard the evidence, but that is not the case; the evidence, or the lack of it, all points one way, inexorably toward the opposite result. We conclude, under the circumstances, that the trial court abused its discretion in setting aside the judgments to permit defendant to withdraw his pleas of guilty and enter pleas of not guilty in cases numbered 1074–J and 1076–J.

We next consider the Crowe assault case. The state contends that defendant is guilty of this charge of assault with intent to kill with malice although his bullet did not strike Detective Crowe; that he is guilty of this charge, because defendant shot at Crowe. Therefore, the state argues, it makes no difference that defendant was not informed his bullet had not struck Crowe; that under these circumstances injustice could not result from refusing to permit defendant to withdraw his plea of guilty to this charge. One difficulty with this contention is that the record does not support the state's assertion defendant shot at Crowe. The record is not clear as to all that happened during and immediately after defendant escaped from Crowe's attempt to apprehend him, but there is no positive testimony defendant shot at Crowe. There is testimony he shot at Harper and another officer, but none that he shot at Crowe.

We are inclined to the view, and hold, that under these facts the court did not abuse its discretion in setting aside this judgment and in permitting defendant to withdraw his plea of guilty to permit a plea of not guilty in the Crowe assault case (No. 1075–J).

The orders sustaining defendant's motion and the judgments setting aside the judgments of conviction in cases numbered 1074–J and 1076–J of the circuit court of the City of St. Louis are reversed. The order sustaining defendant's motion and the judgment setting aside the judgment of conviction in case number 1075–J is affirmed.

All concur.