THE STATE v. ROY E. HAMILTON and DAVE EDDY *alias* EDDIE GAYMAN, Appellants.—85 S. W. (2d) 35.

Division Two, July 11, 1935.

*McKay & Peal* for appellants.

462

*Roy McKittrick,* Attorney General, and *William W. Barnes,* Assistant Attorney General, for respondent.

BOHLING, C.—Roy E. Hamilton and Dave Eddy, *alias* Eddie Gayman, were charged with the murder, in the first degree, of Arthur Cashion and pleaded guilty. Their punishment was assessed at death. Thereafter they filed a motion to set aside the judgment and to withdraw said pleas of guilty, and appeal from an adverse ruling thereon.

█ The State contends that, since no motion for new trial was ever filed, the only matter for review before this court is the record proper. Judgment was entered of record on January 20, 1934. On February 21, 1934, and during said term of court, leave having been obtained, defendants' motion to set aside said judgment and to permit the withdrawal of the pleas of guilty was filed. We agree with the learned Attorney General that, for a review of errors occurring upon the trial of a criminal cause, it is essential that a motion for new trial be filed before judgment. [Sec. 3735, R. S. 1929, Mo. Stat. Ann., p. 3275.] However, this is an appeal from an order refusing to set aside a judgment and for permission to withdraw pleas of guilty upon which said judgment was entered. We find no statutory provisions limiting the time within which such a motion may be filed. In State v. Lonon, 331 Mo. 591, 596(1), 56 S. W. (2d) 378, 380, we said: "Courts of general jurisdiction have inherent authority, during the term, to vacate any judgment or order that may have been made at that term." This court has reviewed the action of the trial courts on like motions filed subsequent to the entry of the judgment [State v. Cochran, 332 Mo. 742, 744, 60 S. W. (2d) 1, 2; State v. Williams, 320 Mo. 296, 301, 6 S. W. (2d) 915, 916; State v. Harris, 336 Mo. 737, 81 S. W. (2d) 319], and apparently without regard to the lapse of time if filed during the term the judgment was entered [State v. Jonagan, 311 Mo. 540, 546, 278 S. W. 775, 777, judgment entered January 22, 1925, and motion to set aside filed February 26, 1925]. Defendants having filed their said motion under leave of court during the term at which judgment was rendered, the action of the court thereon is reviewable.

█ Defendants contend that, on a trial on the merits, they would be entitled to an instruction on second degree murder and to interpose the plea of self-defense; and, therefore, their motion should have been sustained. These contentions are based on the theory that defendants had no intention to kill at the inception of the attempted robbery; and that when deceased showed resistance they abandoned the attempt to rob and shot deceased in self-defense. This necessitates a statement of the facts attending the homicide.

The following facts were adduced from defendants at the hearing held on their motion: The defendants had been drinking and drove their automobile up to a service station operated by Arthur Cashion, deceased, about eight P. M., December 24, 1933, with the purpose and intention to rob the deceased, and ordered five gallons of gasoline. Each had a gun. Defendants entered the service station while Cashion was servicing their car. When Cashion came in he was between the defendants and the door to the service station. Defendant Eddy drew his pistol and ordered Cashion to throw up his hands. Events followed in rapid sequence. Cashion immediately secured a

gun from beneath his sweater, and Eddy took hold of the gun and tried to take it from Cashion. Cashion shot Eddy through the hand, knocking him away from the gun, and was backing toward the door. Eddy grabbed Cashion again and Cashion shot him through the right lung. Eddy then began firing and shot five or six times. Defendant Hamilton had been standing by the stove and had some money in his hand to pay for the gasoline when Eddy issued his order to Cashion. He attempted to seize Cashion's arm, but when the shooting started he took refuge behind the stove, and shot at Cashion three times. One of Cashion's shots grazed Hamilton's cheek. Most of the shots were fired while Cashion was in the doorway. Cashion ran out and his body was found at a corner of the service station.

By Section 3982, Revised Statutes 1929 (Mo. Stat. Ann., p. 2778) ''. . . every homicide which shall be committed in the perpetration or attempt to perpetrate any . . . robbery . . . shall be deemed murder in the first degree.'' The statute makes no exception. State v. Hart, 292 Mo. 74, 100(6), 237 S. W. 473, 482, states: ''The defendant's connection with the crime was through his association with the other men in the attempt to rob the bank, in which attempt the murder was committed. It was murder in the first degree if he was there with the others engaged in that enterprise.'' The statute so reads. [See State v. Merrell (Mo.), 263 S. W. 118, 123(13).] There is no evidence in the record upon which to base an instruction on murder in the second degree.

Nor does the evidence justify the submission of the issue of self-defense. There was no abandonment, request for peace, or surrender communicated to deceased. Defendants' efforts were directed toward the accomplishment of the robbery or their escape without apprehension. They were admitted felons, engaged in attempted robbery by means of dangerous and deadly weapons, and brought on the combat in an effort to accomplish the crime. Deceased had the legal right to defend himself and his place of business against defendants' felonious acts. [Sec. 3985, R. S. 1929, Mo. Stat. Ann., p. 2789; Morgan v. Durfee, 69 Mo. 469, 475(1).] The plea of self-defense may only be asserted against an unlawful attack. In State v. Hart, 292 Mo. 74, 100(7), 237 S. W. 473, 482(28), deceased, a bank employee, was killed during an attempt to rob the bank. The court said: ''The appellant also assigns error to the failure of the court to instruct on self-defense on the theory that the deceased fired the first shot. The only evidence upon the subject is to the effect that the men came into the bank with their guns in their hands. There was no ground for self-defense.''

The defendants contend that their pleas of guilty were made under duress; that is, under the fear and excitement of mob vio-

lence, and for that reason the judgment should not be permitted to stand.

While a plea of guilty is a confession in open court, to be received with caution and only if voluntarily and freely made [State v. Cochran, 332 Mo. 742, 745(2), 60 S. W. (2d) 1, 2(5-8)]; when accepted and entered by the court, it " 'is a conviction of the highest order, the effect of which is to authorize the imposition of the sentence prescribed by law on a verdict of guilty of the crime sufficiently charged in the indictment or information.' " [Dusenberg v. Rudolph, 325 Mo. 881, 886, 30 S. W. (2d) 94, 96, quoting 8 R. C. L., p. 116, sec. 85.] Granting permission to a defendant to withdraw a plea of guilty accepted by the court rests within the sound discretion of the trial court, its finding being entitled to due deference upon review. [State v. Kellar, 332 Mo. 62, 69, 55 S. W. (2d) 969, 972(2), to which reference is made for an exhaustive review of the Missouri case law.]

We are in accord with the rulings made in the cases cited by defendants to the effect that a defendant should be permitted to withdraw a plea of guilty entered under fear of mob violence. In Sanders v. State, 85 Ind. 318, 321, the evidence showed the presence of a large number of angry men, uttering threats of violence and apparently determined to seize and hang the accused unless punishment be immediately imposed; that the judge of the court was greatly excited and stated he had not drawn an easy breath until the train taking accused away was in motion; that the sheriff and other officials stated there was great and imminent danger of mob violence; and that the plea of guilty was reluctantly acquiesced in by accused after urgent insistence by his counsel. In Little v. Commonwealth, 142 Ky. 92, 94, the defendant was indicted, convicted on his plea of guilty, and hurried away for fear a mob might hang him, all within a few hours. The order of the trial court in part read: "The defendant being convicted of murder and his punishment fixed at death, and it appearing to the satisfaction of the court that there is danger of mob violence to said prisoner if he should be kept in jail at Jackson; . . ." and the court authorized the summoning of a sufficient guard to protect the prisoner and convey him to the jail at Lexington. There was also uncontradicted evidence that the accused killed in self-defense; and that he had been advised to plead guilty before the train left for Lexington as there had been talk of mob violence.

On examination of the Missouri cases involving confessions made under claimed fear of mob violence, we find: In State v. Patterson, 73 Mo. 695, 703, there were threats of a mob. Several men came to the room where the prisoner was being guarded at night and knocked at the door. The guards said they would shoot the first

man that attempted to come through the door, and the prisoner remarked: "Boys, my hair stood on end. If it had not been for you they would have mobbed me." The next day while being conducted on horseback to the venue county the prisoner confessed. The court said (l. c. 707): "At any rate, we are not disposed to regard any apprehensions which may have arisen to the prisoner's mind as still continuing at the time he confessed." In State v. Anderson, 96 Mo. 241, 248, 9 S. W. 636, 638, defendant was arrested during a coroner's inquest and while public excitement was high. Fears were expressed of mob violence, threats of lynching were made, a public meeting condemning violence was held that evening, and defendant and a codefendant were removed to another county. Defendant made a confession soon after his arrest. The court held, in the absence of evidence that any number of persons had combined to do defendant harm and under testimony that defendant made the statements of his own volition, the confession was admissible irrespective of how much excitement prevailed in the community. In State v. Johnson, 316 Mo. 86, 92, 289 S. W. 847, 849 (6), the officer in charge of the defendant said to him at the time he secured his confession: "The sooner we get out of town the better it will suit me. I don't want anything to happen. I don't want any party; come up and tell me everything you know." It was contended that the confession was induced by threat of mob violence and inadmissible. "If there had been rumors or threats of mob violence, to render the confession inadmissible it must appear from the evidence that the defendant was induced to make the confession under the influence of the fear of violence. It does not appear from the evidence for the State that the confession was induced by such fear." [See, also, State v. Armstrong, 167 Mo. 257, 264, 66 S. W. 961.]

One of defendant's witnesses testified there was some talk of the possibility of mob violence on the streets, and he thought he heard it mentioned a few times around the courthouse and thought there was some talk about a rope or two. Another witness for defendants testified he was around the courtroom all day and in the lobby but did not hear any discussion of mob violence.

Defendant Eddy, who was forty-two years of age, testified a post office inspector stated to him within a day or two after his arrest on January 3rd and while he was at Poplar Bluff that "feeling was pretty high against us over here," and advised not bringing defendant back immediately on that account (defendant Hamilton was then confined in the New Madrid jail); that the prosecuting attorney, about a week later, stated "that feeling was pretty high over here;" and that the officers present at the time of his arrest "said they ought to hang us right there." On January 4th, at Poplar Bluff, defendant Eddy made a sworn signed confession stating it

was freely and voluntarily made, without threats or promises, and with full knowledge it might be used against him in court. He also testified as follows: "Q. At any other time did any officials say anything to you about threatening mob violence? A. Said they were afraid of it, yes, sir. . . . Q. Were you induced to enter a plea of guilty on account of threatening mob violence, that if you didn't you would be mobbed? A. I didn't know what would happen to me."

Defendant Hamilton, who was twenty-five years of age, testified: "Q. Now, after you were arrested did you get information that there was threatening of mob violence? A. Yes, that was the talk, talked quite a lot around the jail. Q. You heard they were threatening to mob you? A. Yes. Q. What effect did that have on you? A. Well, I figured to plead guilty and get off the easiest and best way. Q. To avoid mob violence? A. Yes. Q. How frequently did you hear threats of mob violence had been made before you entered your plea of guilty? A. Well, I couldn't say exactly, I don't just exactly remember. Q. Do you recall who it was that reported they were threatening mob violence? A. No, I couldn't exactly know. Q. Did you ever hear any officers talk about threatening mob violence? A. Heard it mentioned about mobs between themselves, and they left the impression there would be mob violence, and Mr. Harris had told me he wouldn't advise me wrong, and talked to me like he believed that it would be the best way, in fact, the only way out of it." He testified that at the time he made his signed confession on January 3rd no one threatened him or made any promises to him, but that he had the impression "we wouldn't get the rope and that we wouldn't be lynched;" that there was no threat made if he wouldn't make the statement. His signed confession, made on January 3rd, the day of his arrest, states that it was voluntarily made, knowing it to be true, without threats or duress, or promise of any character whatsoever being made to him, and knowing it might be used against him in court as evidence; and again that it was made of his free will and accord, without fear or intimidation, or promise of reward. He also testified on cross-examination that he made the signed confession voluntarily "under the circumstances;" that nobody threatened him if he did not make the statement; and that he entered his plea of guilty before the court voluntarily "under the circumstances."

At the time of the preliminary the prosecuting attorney advised the defendants that the circuit court would appoint counsel for them, and immediately after the preliminary advised defendant Eddy he was going to ask the death penalty whether defendants stood trial or entered a plea, informing him again the court would appoint counsel, and that said defendant stated he did not want counsel.

There is ample evidence that the court offered to appoint counsel to represent defendants; that he considered it a duty of the court; and it was only after the refusal of these offers that the court accepted their pleas of guilty.

Each defendant had been convicted three times for the violation of State or Federal laws and had served time for each offense. Their testimony indicates they comprehended the gravity of the offense with which they were charged and the severity of the punishment a conviction would impose.

The record before us discloses mature deliberation on the part of the court. In the cases relied on by defendants the trial court realized the tenseness of the situation at the time the pleas were accepted by the court. No such circumstances exist in the instant case. The homicide occurred December 24, 1933. Defendants were arrested January 3, 1934. Defendant Hamilton was immediately placed in the New Madrid jail and defendant Eddy, who was suffering from a wound, after a stay at Poplar Bluff for approximately one week, was brought to New Madrid. Their pleas were accepted on January 15. Sentence and judgment were not entered until January 20. Accepting defendant's testimony of statements made to them, the only testimony of any definite statements to either is that of defendant Eddy to the effect that at the time of the arrest the officers stated they ought to hang defendants right there, and, later, that feeling at New Madrid was pretty high against them, the last of which was made five or six days prior to their pleas of guilty. Any fear aroused by the statement attributed to the officers at the time of the arrest to the effect that they ought to hang defendants must have ended when it was apparent no such action was being taken—certainly when the defendants were safely confined in jail— as all danger of carrying out such threat had ceased to exist. Nor do we consider the statements to the effect that feeling at New Madrid was pretty high against defendants to be of such a nature as to exert a continuing influence upon them forcing their pleas of guilty five or more days thereafter. [State v. Patterson, supra.] The repeated suggestions, amounting, in fact, to an insistence, that defendants accept the aid of counsel must have afforded defendants some assurance that their legal rights were being respected and would be protected. The trial court must have entertained no impressions of danger from mob violence at the time the pleas were accepted. Its repeated requests that defendants permit the appointment of counsel, and its deferring judgment for several days negatives the existence of danger from a mob. It is common knowledge that the life of a mob is short; that its action is taken at an early opportunity while the public sentiment aroused by the offense is crystalized for action and before it has had time to cool. The de-

fendants admit they were accorded proper treatment at all times during their confinement. There is an entire absence in this record of any evidence of any overt act of a hostile nature against defendants by any group of men, and also of any precaution taken by the officers to protect defendants from any of the claimed threats of mob violence. Other than the statement attributed by defendant Eddy to the officers at the time of the arrest, there is no definite testimony of any specific threats of violence communicated to the defendants or talked among the citizens. Defendants' evidence is based upon rumors of a general nature. This we think should not overthrow the solemn judgment of a court. Defendants were of mature age. Their actions at the time of the homicide marks them as men of nerve, capable of effective action to accomplish their purpose to rob or to effect their escape in the presence of danger. At the time their pleas were accepted and again when judgment was entered the actions and appearances of the defendants were under the observation of the court. The court observed their demeanor on the witness stand at the time they gave their testimony on the motion to set aside the judgment. The court's knowledge of such facts is entitled to due weight here. The presumption of right action on the part of the court warrants the indulgence that defendants evidenced no such disquietude at the time of the acceptance of the pleas as to cast doubt on their voluntary nature. Three times convicted, each defendant, in addition to the information imparted to them by the prosecuting attorney and the court, must have had some knowledge of the protection the law affords an accused. When judgment was entered on January 20, after five days upon which to deliberate on the circumstances under which their pleas had been accepted and with knowledge of the severity of the penalty that might be imposed, each defendant was accorded allocution. With this opportunity afforded by the tribunal to which they were appealing for mercy, neither defendant afforded the court cause to question the voluntary nature of their pleas. In the cases where this court has set aside judgments entered under a plea of guilty and permitted the withdrawal of such plea, the record has disclosed convincing facts showing that the accused was mislead or was under a misapprehension at the time he judicially confessed the crime. The record in the instant case contains no such convincing showing of facts necessitating the conclusion that the pleas of defendants were exacted under the influence of fear of mob violence.

The character of each defendant was admittedly bad. Each was intensely interested in having the judgment set aside. They, no doubt, were disappointed with the sentence imposed. Had their contention that mob violence was threatened been sustainable, difficulty should not have been experienced in proving some overt act

470

to that effect. The scenes upon which defendants' motion rests were enacted before the trial court at the time defendants' pleas were accepted and thereafter when judgment was entered, supplemented at the hearing on the motion to set aside the judgment. The court evidently considered that any fears of mob violence on the part of defendants was without foundation in fact; that their appearance and conduct at the time they refused counsel and entered their pleas of guilty and again when judgment was entered was not such as to indicate excitement or mental agitation affecting the pleas; and that the motion to set aside the judgment and withdraw the pleas was an afterthought induced by the hope that whatever action was had thereon could result in no disadvantage to them.

It was not incumbent upon the court, under Section 3614, Revised Statutes 1929 (Mo. Stat. Ann., p. 3187), to appoint counsel for defendants over their refusal to accept counsel. [State v. Miller (Mo.), 292 S. W. 440, 442(10).] However, had the court appointed counsel we do not perceive how prejudicial error could have resulted. [State v. Greaves, 243 Mo. 540, 551(6), 147 S. W. 973, 975(7).]

After a painstaking study of the showing made upon defendants' motion with a view of affording defendants every advantage to which they lawfully might be entitled, we are of the opinion that, under the law of the case, the trial court was within the rightful exercise of its discretion and is not to be convicted of error in overruling said motion.

We find no error in the record proper.

The judgment of the trial court is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.

Date of execution set for August 16, 1935.