THE STATE v. VICTOR EARL POWELL *alias* RICHARD E. POWELL, Appellant.—95 S. W. (2d) 1186.

Division Two, June 30, 1936.

*W. H. Foulke* for appellant.

*Roy McKittrick*, Attorney General, and *Frank W. Hayes*, Assistant Attorney General, for respondent.

BOHLING, C.—Victor E. Powell, appellant, and Ledrew B. Harmon, Charles Napper, Byron Wolff, Glenn Harmon and William B. Moors were charged by information with the murder in the first degree of Brooks L. Van Hoose. A severance was granted appellant and he appeals from a judgment imposing, in accord with the verdict, a sentence of life imprisonment. Several of the assignments of error, by different allegations, attack the sufficiency of the evidence to sustain the verdict. The facts connected with the offense are set forth in detail in State v. Wolff, 337 Mo. 1007, 87 S. W. (2d) 436, which, upon examination, we find, so far as essential, correspond with the facts disclosed in the bill of exceptions of the instant case, with the material exceptions that in the instant case appellant made statements, verbal and in writing, of his participation in the offense,

and the witness Charles Napper did not testify. The only evidence in the case is that adduced from witnesses offered by the State.

Mr. Van Hoose, a man of about sixty-two years and of means, was engaged in the quarry, realty, loan and investment business, with an office in Carthage, Missouri, and lived alone approximately five miles southwest of Carthage, about one mile south of Federal high-ways 71 and 66 (coincident there) on a graveled highway. He was last seen alive by a business associate when he left the office about six P. M. Saturday, March 3, 1934. On Sunday, March 4th, about noon, Mr. Murray, a neighbor, returned a borrowed trailer to the Van Hoose garage. The house was closed, and Mr. Murray was unable to arouse anyone, although Mr. Van Hoose's Buick coupe was on the driveway, under the "portico," immediately in front of the west door of the residence. Mr. Murray noticed a hole in the left door of the coupe. On Monday morning Mr. Murray noticed the coupe had not been moved. He again went to the residence and, being unable to arouse anyone, proceeded to Carthage and reported the situation to friends of Mr. Van Hoose; who immediately went to his residence and, the doors of the house being locked (the west door by means of an automatic lock), effected an entrance into the house through a window.

Mr. Van Hoose's body, fully dressed, was lying on the floor of the north (living) room of the residence, with his feet near or ex-tending across the opening of that room into a vestibule, the (west) door of which opened out onto the driveway where his coupe was parked. Bullet wounds were found on the right chest and left shoulder. The chest wound extended through the body. A 32-caliber steel jacket bullet was found in the vestible and another removed from his body. A 38-caliber revolver was found by the side of de-ceased, fully loaded with leaden bullets with the exception of the hammer chamber which had been discharged. A 38-caliber leaden bul-let was found on the floor of the coupe. There was no indication of a struggle in the house. The clothing of deceased was in order, a valuable diamond ring was on one of his fingers, some money and his watch was in his pockets, and nothing of value appeared to have been removed.

Dr. Hogan, the coroner, testified he examined the body between eleven and twelve A. M. of March 5th; that deceased had been dead between thirty-four and thirty-six hours; that the chest wound alone was fatal; and that death probably occurred within a hour and a half after the infliction of the wound.

A neighbor testified to hearing shots in the vicinity of the Van Hoose residence between eight and nine P. M. on March 3rd. R. E. Dugan, operator of a tourist camp known as "Sleepy Hollow," about three miles east of Carthage on No. 66, testified to the defendants meeting at his place on the afternoon of March 3rd, and departing

about seven-thirty P. M. in a Ford V8 sedan, going in the direction of Carthage.

Appellant was arrested in Denver, Colorado, on March 13, 1934, and returned to Jasper County for trial. His voluntary signed written statement, witnessed by Prosecuting Attorney Ray E. Watson and Sheriff Oll Rogers, is to the following effect: Appellant met Glenn Harmon and Jerry Wolff in Denver about February 27, 1934. They left for Kansas City, Missouri, and arrived there March 1, 1934. On Saturday, March 3rd, Glenn Harmon, Jerry Wolff and a "fellow whom they called 'Joe'" (William B. Moors), and who was driving a Ford V8 sedan, went to Carthage to see some of Harmon's relatives. They stopped at the "Sleepy Hollow" tourist camp. L. B. Harmon, Glenn's brother, joined them there. Later L. B. Harmon brought Charles Napper to the tourist camp. The statement continues: "Shortly after dark Glenn Harmon, L. B. Harmon, Joe, Jerry Wolff, Charles Napper, and myself all came to Carthage in the V8 Ford sedan, and L. B. Harmon and Charles Napper got out of the car. Joe was driving the V8 Ford with Glenn Harmon in the front seat with him and myself and Jerry Wolff in the back seat. We drove west on 71 highway and then turned off on a side road which was graveled. We traveled down the gravel road about one mile and as we passed a large house on the left hand side of the road Glenn Harmon said that was the place. We passed it and turned the car around and headed back toward the highway and passed the house again and parked there by the side of the road with the car lights off. Glenn Harmon and Jerry Wolff got out of the car as soon as it stopped. On the way out to the place Glenn Harmon said that we were going out there to 'poke him up'—rob him—and said he had plenty, or something of the kind. Glenn and Jerry were both armed with revolvers and automatic pistols. They were gone from the car a short time when I heard some shots fired but I do not know how many. Glenn and Jerry came back to the car running and climbed madly in it and Glenn said, 'Start driving—let's go.' Joe started the car immediately and started toward the highway. After we got started Glenn Harmon said, 'I had to shoot him, he took a shot at me and the bullet just went by my head.' Glenn then reloaded his gun. We drove straight to Highway 71 and followed it to Kansas City, Missouri, at a high rate of speed. I got out of the car at 12th & Broadway in Kansas City and haven't seen Glenn or Jerry or Joe since that time. I stayed in Kansas City Sunday and Monday and left Monday night on a bus going as far as Dodge City, Kansas. I then went on to Denver, arriving there the night of March 7, 1934. I was arrested in Denver on Tuesday, March 13, 1934. . . ." In a conversation with Mr. Rogers and Mr. Watson, appellant, in answer to an inquiry as to whether they intended to kidnap or rob Mr.

Van Hoose stated they intended to rob him. Asked: "What were you going to get out of this; were you after the diamond ring, or money?" appellant stated: "Glenn told us he had plenty, and I was going to get my share." Appellant went with the officers to Mr. Van Hoose's residence and told the officers and showed them where and how the car was driven and stopped on the night of the murder.

A conspiracy existed to rob Mr. Van Hoose, to which appellant was a party and was to receive his share of the spoils. His coconspirators proceeded to effect the object of the conspiracy, armed with revolvers and automatic pistols, and, while so engaged, committed the murder. The murder was part of the *res gestae* of the attempted robbery, committed upon the intended victim at his home. By statute, every homicide committed in an attempt to perpetrate a robbery is murder in the first degree [Sec. 3982, R. S. 1929, Mo. Stat. Ann., p. 2778; State v. Hamilton, 337 Mo. 460, 85 S. W. (2d) 35, 36(3), and, among others, the cases there cited.] [2] It is well settled that when parties conspire together to commit an unlawful act, each is criminally responsible for the acts of his coconspirators committed in the prosecution of the common design. The rule embraces conspirators not present as well as those present at the scene of the offense [State v. Carr (Mo.), 256 S. W. 1043, 1048(19)]. The instant case is not one merely of constructive presence. Appellant, not only was a member of the conspiracy but, was also present, of his own initiative, aiding and abetting in the execution of the common design. Remaining in the automobile, he was in a position to cooperate with his coconspirators, to give warning to prevent surprise or facilitate escape, to go to their assistance if necessary, and to preserve available the means provided for escape. The offense of robbery or attempt to rob necessarily involves the use of force and, in the event of disobedience to commands, violence. The law of this State neither requires nor contemplates that citizens cringingly or timidly or peacefully submit to such outrages. It was, therefore, but a natural and probable consequence of the execution of the conspiracy to rob that the offenders might be required to take life unlawfully. Armed with revolvers and pistols and prepared in numbers and with the means to accomplish their unlawful purpose, the conspirators were not unmindful of the consequences that might flow from an attempted execution of the conspiracy. The facts of the instant case bring appellant well within the rules of law making him responsible for the acts of his coconspirators resulting in the death of Mr. Van Hoose. [State v. Aguelera, 326 Mo. 1205, 33 S. W. (2d) 901, the appeal of Martinez; State v. Hart, 292 Mo. 74, 99, 237 S. W. 473, 481(25); State v. Miller, 100 Mo. 606, 620, 624(7), 13 S. W. (2d) 832, 837(7), and, among others, State v. Mule, 114

N. J. L. 384, 177 Atl. 125, 130(8); Woodward v. State, 166 Miss. 596, 143 So. 859; 13 R. C. L., p. 730, sec. 31, note 11; 29 C. J., p. 1073, sec. 46.] In State v. Darling, 216 Mo. 450, 459, 115 S. W. 1002, 129 Am. St. Rep. 526, 23 L. R. A. (N. S.) 272, we said: "If several persons conspire to do an unlawful act and death happens in the prosecution of the common object, all are alike guilty of the homicide. The act of one of them done in furtherance of the original design is in the construction of law the act of all. And he who advises or encourages another to do an illegal act is responsible for all the natural and probable consequences that may arise from its perpetration."

Complaint is made of the admission of certain testimony of witness Dugan involving a conversation between the Harmon Brothers, the writing of a note by the witness to Deputy Sheriff Hatcher, and detailing the conversation between said witness and said deputy sheriff. We fail to find any testimony of the witness detailing a conversation with the deputy sheriff. The bill of exceptions discloses no objection, or motion to strike, interposed to the specified testimony, and its admission is not subject to review. [State v. Lindsey (Mo.), 80 S. W. (2d) 123, 127(12); State v. Buckner (Mo.), 80 S. W. (2d) 167, 170(12); State v. Barbata, 336 Mo. 362, 379(9), 80 S. W. (2d) 865, 874(18).]

Under Section 3735, Revised Statutes 1929 (Mo. Stat. Ann., p. 3275), assignments of error to the effect merely that the court erred "in refusing to give Instruction No. A" and "Instruction No. B" "as requested by defendant" [State v. Rosegrant, 338 Mo. 1153, 93 S. W. (2d) 961, Paragraph VI; State v. Ward, 337 Mo. 425, 85 S. W. (2d) 1, 6(8); State v. Bennett (Mo.), 87 S. W. (2d) 159, 162(6)] are too general to preserve anything for appellate review. The record discloses said refused Instruction No. A authorized a verdict of guilty of murder in the second degree. The assignment of error merely to the effect the court refused to instruct on murder in the second degree also is too general. Furthermore, the homicide was committed in an attempt to perpetrate a robbery and, under the evidence, appellant, if guilty of any offense involving a homicide, was guilty of murder in the first degree under Section 3982, Revised Statutes 1929 (Mo. Stat. Ann., p. 2778). The evidence did not require an instruction on murder in the second degree. [State v. Aguelera, 326 Mo. 1205, 1214(II), 33 S. W. (2d) 901, 904(4); State v. Hamilton, 337 Mo. 460, 85 S. W. (2d) 35, 36(3).]

Finding no error in the record proper, the judgment is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.