251 S.W.2d 617 (1952)
STATE
v.
HURLEY.
No. 43164.
Supreme Court of Missouri, Division No. 1.
October 13, 1952.
*618 Clayton W. Allen, Rock Port, for appellant.
J. E. Taylor, Atty. Gen., Arthur M. O'Keefe, Asst. Atty. Gen., for respondent.
DALTON, Judge.
Defendant was convicted of feloniously operating a motor vehicle while in an intoxicated condition and his punishment fixed at three years imprisonment in the state penitentiary. He has appealed.
Appellant first contends that the information in this case is fatally defective as the defendant was not named in the body of the information. Appellant's name is set forth in the caption of the information and he is designated defendant, as follows: "State of Missouri, Plaintiff v. John Hurley, Defendant." The information then purports to state a charge under Section 564.440 RSMo 1949, V.A.M.S., to wit, that "upon the 22nd day of April, 1951, in the County of Atchison, and the State of Missouri, the defendant did then and there unlawfully and feloniously drive and operate a motor vehicle while in an intoxicated condition * * *." (Italics ours.) The specific name "John Hurley", however, does not appear in the body of the information.
Appellant contends that the caption is no part of the information, State v. Freeman, 21 Mo. 481, 483; Kirk v. State, 6 Mo. 469; State v. Blakely, 83 Mo. 359; that an information which fails to charge a crime is fatally defective, State v. Whitaker, 160 Mo. 59, 60 S.W. 1068; and that an information which charges an offense, but does not name the person accused is a nullity, State v. Stern, 4 Mo.App. 385.
Where the offense sought to be charged is sufficiently set forth in form and substance in the body of the information, of course, it may not be held bad by reason of any defect in the caption. State v. Freeman, supra; Kirk v. State, supra; State v. Blakely, supra. The question here does not concern a defective caption, but it is whether the caption may be considered in determining the person referred to by the words "the defendant" in the body of the information and so aid the information by making certain as to the specific person charged with the offense.
We think the information was entirely sufficient to charge the appellant, who was the person named in the caption, with *619 the offense for which he was prosecuted and convicted and that appellant was not, and could not have been, prejudiced by the failure to set forth appellant's name in the body of the information. The words "the defendant" in the body of the information must be construed as referring directly to the appellant, who was the defendant named in the caption. An information may properly have a caption wherein the defendant is specifically named. Section 545.270. (All references are to RSMo 1949, V.A.M. S.).
Section 545.030 provides that "No indictment or information shall be deemed invalid * * * For any surplusage or repugnant allegation, when there is sufficient matter alleged to indicate the crime and person charged; nor * * * For any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits * * *."
Since appellant was named as defendant in the caption or style of the action, we think it is clear that he was the person referred to by the use of the words "the defendant" in the body of the information. The person so named as defendant in the caption or style of the action and referred to in the body of the information by the use of the words "the defendant" was clearly the party charged with the offense stated. Appellant could not have failed to know that he was the person charged. The defect or imperfection could not have tended to prejudice the substantial rights of appellant upon the merits of the action. The party charged was sufficiently designated. Section 545.030; State v. Stokes, 288 Mo. 539, 232 S.W. 106, 111; Marshall v. State, 19 Ariz. 44, 165 P. 313, 314; State v. Sawyer, 233 N.C. 76, 62 S.E.2d 515, 517. The information was otherwise sufficient to charge appellant with the offense for which he was prosecuted and convicted. Section 564.440; State v. Reifsteck, 317 Mo. 268, 295 S.W. 741; State v. Couch, 344 Mo. 78, 124 S.W.2d 1091.
Appellant next contends that the trial court should have appointed counsel for him "and should have given counsel opportunity and time to prepare the defendant's defense." Appellant relies upon Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 60, 77 L.Ed. 158, and other cases. In his motion for a new trial defendant contended that the court erred "because the attorney for the defendant, requested by the Court to advise the defendant in the conduct of the case, was not given time in which to acquaint himself with the charge against the defendant, or with the evidence against him, or to gather such evidence as may have been available in favor of the defendant." The record presented for review does not expressly show the appointment of counsel and the motion for a new trial does not assign error on account of any failure of the court to appoint counsel for defendant.
The record proper shows that, on May 28, 1951, the defendant appeared in person with his sister and announced that he understood the charge against him and that he would represent himself. At that time the trial court entered an order setting the cause for trial on August 22, 1951. The bill of exceptions shows that on August 22, 1951, defendant personally announced that he waived formal arraignment and entered a plea of not guilty. Defendant further announced that he was ready for trial. Before the jury was sworn, the court said: "Mr. Hurley, the defendant here, has announced that he would be his own lawyer and when Mr. Savage (an attorney) came in I asked him if he would sit here and sort of guide him along in anything he might need, so in fairness to Mr. Hurley I want to make that statement, and I say to Mr. Hurley now I asked Mr. Savage to do that, although you wanted to try it yourself." Defendant answered, "That is all right, but I still don't think I needed one." No request was made at any time for the appointment of counsel. See Section 545.820. Counsel, when appointed, at no time asked to be given time to prepare for trial, but he cross-examined the witnesses and represented defendant in the trial and, thereafter, filed the motion for a new trial.
Appellant may not now complain of the court's failure to appoint counsel. Counsel was in fact appointed, but no request was made therefor and the matter of failure to appoint counsel was not raised in *620 the motion for a new trial. Secs. 545.820 and 547.030. In the case of United States v. Dennis, 2 Cir., 183 F.2d 201, 234, Judge L. Hand pointed out that "one has an absolute privilege of doing without any attorney, if one wishes". In any case, upon the record presented it cannot be said that there was any "denial of the assistance of counsel," nor can it be said that defendant was "not accorded the right of counsel." The assignment is overruled. State v. Hamilton, 337 Mo. 460, 85 S.W.2d 35, 41; State v. Moore, 121 Mo. 514, 521, 26 S.W. 345.
Appellant next contends that there was no substantial evidence to sustain the conviction and that the court should have directed a verdict for defendant, as requested, at the close of all the evidence. Appellant further says that the state's principal witness, Bill Jones, made conflicting statements and was impeached by proof of prior convictions.
The state's evidence tended to show that at about 9 p. m. on Sunday evening, April 22, 1951, defendant was driving a 1937 Ford automobile in a westwardly direction on highway No. 4 in Atchison County, Missouri, at a point some six or seven miles east of Tarkio, Missouri. He was accompanied by Bill Jones, the owner of the automobile. Jones testified that defendant was driving. The Ford automobile collided headon with a 1937 Chevrolet automobile owned and operated by Earl Vogler, which was being operated eastwardly upon the same highway. Mr. Vogler was accompanied by his wife, his son and his daughter. The headlights of both automobiles were burning and, as the automobiles approached each other, the Ford automobile was being operated in the center of the highway. The Chevrolet was slowed down and pulled over to its right, to the south side of the highway, almost to a ditch, where the headon collision occurred. When the automobiles came to rest, the Chevrolet was in the ditch on the south side of the road, still headed east, and the Ford had turned over on its right side and was headed southeastwardly, with the rear portion of the automobile extending into and obstructing the highway. The Ford automobile was badly damaged by the collision. The testimony referred to it as being "torn up." Bill Jones, the owner of the Ford, received cuts and lacerations on his head and face, his lip was cut through and his chin injured. Mrs. Vogler received severe injuries, including a fractured pelvis.
When the defendant first got out of the Ford automobile immediately after the wreck, a witness who observed his condition testified that "he appeared to be drunk." The same witness testified further: "Q. Will you say now that this condition in which he appeared to be that evening out there might not have been caused by the shock of this collision? A. No; I would not say that because it could have been possible." Another witness, who heard the crash and went promptly to the scene of the collision, testified that defendant "was standing there * * * kind of rocking on his feet backwards and forwards and his face was very flushed and he didn't seem to be too alert to what was going on." When inquiry was made of him as to who was driving the Ford automobile he merely said "I am not talking." The same witness further testified that he considered defendant drunk, "the way he acted." This witness also testified that the shock of such a wreck as he saw there might put a man in the same condition that defendant was in that night. He said: "I presume it might be possible."
A highway patrol trooper, who received a call with reference to the collision, reached the scene at about 9:20 p. m. At that time defendant was in an intoxicated condition. "His face was flushed and his breath smelled very strongly of liquor and his talk and speech wasn't coherent; it was rambling." When asked if he was driving the Ford automobile, he told the patrolman that he "would talk when it was talking time." The patrolman "judged from his appearance and his talk and the odor of his breath that he was intoxicated."
As defendant and Jones were being taken to jail after the collision, defendant wanted to go home and Jones said to the patrolman, "Oh, I was driving that car, you just let Johnny go home." At the trial, Jones testified that he said that he was driving only because defendant wanted him to make that statement to the patrolman, but that he was *621 not driving at the time of the collision and the defendant was driving. Jones had had his driver's license revoked. At the trial, Jones admitted that he had plead guilty to a charge of common assault and had had other difficulties.
When the defendant and Jones were delivered to the county jail about midnight, after the collision, the testimony showed that defendant "was not normal, not sober." He wanted to argue with the sheriff "over feeding him." At that time there was liquor on his breath. You could smell it.
There was further evidence that at 1:30 p. m. Sunday afternoon, prior to the collision, defendant was operating the Ford automobile. He was accompanied by Jones. They came to a filling station in the east edge of Tarkio. At that time both defendant and Jones were "pretty well lit up," and defendant's face appeared to be "pretty flushed." There was evidence that defendant and Jones had been together since around 9 o'clock a. m. on that day and that they had visited a number of different places. Sometime after the time of the collision, the highway patrolman asked defendant if he was injured in any way and defendant replied that his only injury was a chest injury, that his chest was sore.
Another witness testified that on July 28, 1951, he talked to defendant about the collision and difficulty and defendant said: "If Bill won't talk, we can both get out of it."
The evidence, as reviewed above, tending to show that defendant was intoxicated and that he was operating an automobile while in that condition, was substantial and entirely sufficient to sustain a conviction for operating a motor vehicle while in an intoxicated condition. State v. Fitzpatrick, Mo.Sup., 267 S.W. 905; State v. Johnson, Mo.Sup., 55 S.W.2d 967. The credibility of the witnesses and the weight and value to be given to their testimony was for the jury.
Finally, appellant contends that the court should have instructed on the defendant's theory of the case, whether requested or not. State v. Brinkley, 354 Mo. 1051, 193 S.W.2d 49, 56. Appellant refers to the testimony of the two state's witnesses who testified that defendant was intoxicated, but further admitted that defendant's condition at the scene of the collision may have been caused from shock.
Whether requested or not, the court must instruct the jury in writing upon all questions of law arising in the case which are necessary for their information in giving their verdict. Sec. 546.070. The law of the case, however, involves only the elements of the particular offense in question and not collateral matters. State v. Rowe, 324 Mo. 863, 24 S.W.2d 1032, 1038. In the case of State v. Miller, Mo.Sup., 234 S.W. 813, 815, the court said: "While it was the duty of the trial court to instruct on all the law of the case, that requirement applies only to the essential features. The court is not required to instruct upon collateral questions which arise in the case unless requested to do so."
The evidence tending to show that defendant's condition immediately after the collision might have been caused from shock only tended to contradict the state's evidence that defendant was intoxicated. The evidence tended to defeat the prosecution by showing that defendant was not drunk, or in an intoxicated condition, and that he was not guilty of the charge against him. Somewhat in the same manner evidence tending to support an alibi tends to defeat the action by showing that the defendant could not have committed the crime since he was not at the place where the offense was committed at the time the offense was committed and, therefore, that he could not be guilty. It is well settled that the trial court, in the absence of a request therefor, need not instruct upon the subject of alibi. State v. Bagby, 338 Mo. 951, 93 S.W.2d 241, 249; State v. Trice, 338 Mo. 744, 92 S.W.2d 135, 136.
In this case the defendant made no request for an instruction with reference to his alleged condition being due to shock rather than to intoxication. The defense suggested by the evidence with reference to defendant's condition being due to shock was in the nature of a collateral matter. The court was not required to instruct upon it without a request therefor.
*622 In this case, the state offered substantial evidence that defendant did in fact drive and operate the motor vehicle in question while in an intoxicated condition. The question of his guilt of such offense was duly submitted and under the instructions given. The jury could not have found defendant guilty without finding that he operated the motor vehicle while in an intoxicated condition. If an instruction was wanted upon the collateral matter mentioned, a request should have been made. Appellant is not now in a position to complain of the court's failure to instruct on the matter mentioned. The assignment is overruled.
No reversible error appearing in the record, the judgment should be affirmed. It is so ordered.
All concur.