Darrell E. Missey, Special Judge
On January 6, 2017, the State charged Dareion Tate ("Defendant") in the Circuit Court of St. Charles County with assault in the first degree, armed criminal action, unlawful use of a weapon, and violation of an order of protection. A jury found Defendant *486 guilty on all four counts. The trial court sentenced him to thirty years in the Missouri Department of Corrections for assault in the first degree, ten years for armed criminal action, fifteen years for unlawful use of a weapon, and one year in the St. Charles County jail for violating an order of protection, all to be served concurrently. Defendant raises two points on appeal. First, Defendant asserts the trial court erred in failing to give a self-defense instruction to the jury. Second, Defendant claims the trial court erred in overruling a relevancy objection raised by defense counsel during closing argument. We affirm.
BACKGROUND
While this Court ordinarily reviews the evidence in the light most favorable to the verdict, in considering whether Defendant was entitled to a self-defense instruction, we view the evidence in the light most favorable to the defense. State v. Whipple , 501 S.W.3d 507, 513 (Mo. App. E.D. 2016). Therefore, we have set forth Defendant's evidence about the shooting and considered the facts asserted in his testimony as true.
On November 16, 2016, at 18 Wilbert Drive in St. Charles County, Missouri, Defendant shot Garnell Carter ("Victim") two times where his estranged wife ("Wife") resided with her four children. Defendant and Wife previously resided together at the home, but they separated in July of 2016. Wife secured a full order of protection against Defendant based on alleged physical and verbal abuse. Pursuant to the order of protection, Defendant was not permitted at the residence. The evidence at trial showed that in spite of that order of protection, Defendant continued to have periodic contact with Wife.
Two weeks prior to the shooting, Defendant and his friend Albert Davis ("Davis") appeared at the home. Davis confronted Wife about the identity of Victim, who was at the residence. Davis threatened to kill Victim, and Defendant angrily approached the front door with a gun. Defendant left the property only after Wife told him she had called the police and Davis pushed him away.
On the morning of the shooting, Wife was preparing breakfast when Davis knocked on her front door. Wife heard Defendant outside asking whose car was in the driveway. Wife looked out the window and saw Davis with a gun. She was afraid Defendant would break down the door, because he had done that before. She called 911. Defendant and Davis continued to knock harder on the door, while one of them yelled he had a gun. Wife also possessed a gun with a laser sight, which she gave to Victim. She took the children upstairs and put them in a back bedroom where she thought they would be safe. Victim activated the laser sight on the gun and pointed it at the door. Victim and Wife went upstairs into one of the bedrooms. Meanwhile, Defendant went to the backyard and climbed on an air conditioning unit to look through a window into one of the bedrooms. Victim and Wife entered that bedroom, and Defendant fired two shots through the window, striking Victim. Victim never fired any shots.
At trial, Defendant testified he saw a Camaro at his Wife's house that he did not recognize and believed she was romantically involved with someone else. He went to Wife's house on the morning in question to obtain a picture of Victim to use against Wife in their pending divorce proceeding. According to Defendant, he went there with his friend Davis who was armed with two guns in holsters on either side of his body. They parked their truck at a neighbor's house and Defendant sent Davis to the front door of the home, where he *487 either knocked or rang the bell. After a period of time passed without anyone coming to the door, Defendant left the truck and decided to walk around to the back of the house to attempt to take a picture through the French patio doors. The curtains were closed on the patio doors so he went to another window. While in the backyard, Defendant testified he heard Davis shout, "he got a beam on me." Defendant ran to the front door and said he saw a man inside pointing a gun with a red laser beam in his direction. He grabbed one of Davis's guns from one of his holsters. Defendant testified he heard his one-year-old daughter scream from the second floor of the home, so he ran to the backyard and jumped on an air conditioner unit to see into the second story of the house. According to Defendant, he looked through the grooves in the closed window blinds and saw Victim enter the room, at which point Victim pointed his gun at Defendant. Defendant testified that he "reacted off instinct" and fired two shots through the window, striking Victim. Defendant then fled the scene.
At trial, the Defendant proffered a self-defense jury instruction, which the court declined to give. The jury returned a guilty verdict on all counts. The trial court sentenced him to thirty years in the Missouri Department of Corrections for assault in the first degree, ten years for armed criminal action, fifteen years for unlawful use of a weapon, and one year in the St. Charles County jail for violating an order of protection, all to be served concurrently. Defendant appeals.
DISCUSSION
In his first point on appeal, Defendant asserts the trial court erred in failing to submit a self-defense instruction to the jury. Defendant argues the issue of self-defense was injected into the case when evidence was presented that Victim pointed a gun at him. In his second point on appeal, Defendant argues that the trial court erred in failing to sustain a relevancy objection during closing argument when the prosecutor referenced evidence that this incident occurred near a school bus stop by posing the question, "What about the children who would have been at the bus stop fifteen minutes later?" We affirm.
I. The Trial Court did not Err in Refusing Self-Defense Instruction
Standard of Review
A trial court's refusal to give a requested jury instruction is reviewed de novo. Whipple , 501 S.W.3d at 513. We review the evidence in the light most favorable to the defendant and the theory propounded by the defendant. Id. In determining whether a trial court erred in refusing to submit an instruction on self-defense, the evidence is viewed in the light most favorable to the defendant. State v. Bruner , 541 S.W.3d 529, 534 (Mo. banc 2018). However, this standard does not require the Court to disregard all evidence contrary to giving the self-defense instruction. Id. at 534, n. 2.
Analysis
Section 563.031, RSMo 2016,[1] sets forth the analysis for determining if self-defense is in issue. Pursuant to Section 563.031.5, the defendant has the burden of showing self-defense is supported by the evidence to inject the issue of self-defense. Bruner, 541 S.W.3d at 534-35. The quantum of proof necessary to inject *488 the issue of self-defense and thus, require a self-defense instruction, is "substantial evidence," which has been defined as "evidence putting the matter in issue" or "evidence which tends to establish the defendant's theory, or supports differing conclusions." Id. at 535. The wording of the statute "necessarily governs what is required to inject self-defense." Id. at 537.
The elements of self-defense which must be shown by substantial evidence are set forth at Section 563.031. The statute provides, in relevant part:
1. A person may, subject to the provisions of subsection 2 of this section, use physical force upon another person when and to the extent he or she reasonably believes such force to be necessary to defend himself or herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful force by such other person, unless:
(1) The actor was the initial aggressor ...
2. A person shall not use deadly force upon another person under the circumstances specified in subsection 1 of this section unless:
(1) He or she reasonably believes that such deadly force is necessary to protect himself, or herself or her unborn child, or another against death, serious physical injury, or any forcible felony;
(2) Such force is used against a person who unlawfully enters, remains after unlawfully entering, or attempts to unlawfully enter a dwelling, residence, or vehicle lawfully occupied by such person; or
(3) Such force is used against a person who unlawfully enters, remains after unlawfully entering, or attempts to unlawfully enter private property that is owned or leased by an individual, or is occupied by an individual who has been given specific authority by the property owner to occupy the property, claiming a justification of using protective force under this section.
3. A person does not have a duty to retreat:
(1) From a dwelling, residence, or vehicle where the person is not unlawfully entering or unlawfully remaining;
(2) From private property that is owned or leased by such individual; or
(3) If the person is in any other location such person has a right to be.
Under section 563.031, there are three statutory elements that must have been established by substantial evidence to determine whether self-defense had been injected into a case. State v. Kendrick , 550 S.W.3d 117, 123 (Mo. App. W.D. 2018). To warrant giving the self-defense jury instruction, the Court must find substantial evidence: (1) that the defendant was not the initial aggressor, and reasonably believed physical force was necessary to defend himself from what he reasonably believed to be the use or imminent use of unlawful force of another, (2) that the defendant reasonably believed deadly force was necessary to protect himself against death, serious physical injury, or any forcible felony, and (3) that the defendant did not have a duty to retreat. Id. at 123-24. "Reasonable belief" is defined as "grounds that could lead a reasonable person in the same situation to the same belief." Id. at 124, quoting State v. Smith , 456 S.W.3d 849, 852 (Mo. banc 2015). At trial, the trial court refused the self-defense instruction after concluding that Defendant was the initial aggressor and further, Defendant had a duty to retreat under the circumstances.
In cases where the defendant is the initial aggressor, the court is precluded from giving a self-defense instruction. This *489 preclusion exists both in the statute and at common law. Case law is instructive with regard to the issue of when a defendant is an initial aggressor. In State v. Chambers, 714 S.W.2d 527, 531 (Mo. banc 1986), a defendant and a victim engaged in a confrontation during which the victim accepted an invitation to "settle the matter outside." The defendant, who then physically assaulted and shot the unarmed victim in the chest, was not entitled to a self-defense instruction because there was "no evidence on the record to support the conclusion that defendant was not the initial aggressor or that he did not provoke the entire series of deadly events...." Id. Similarly, in State v. Fincher , a defendant who fired a "warning shot" at a victim was the initial aggressor even though the victim raised his arms with a closed fist at a distance before the defendant fired again. 655 S.W.2d 54, 59 (Mo. App. W.D. 1983). In State v. Williams , 815 S.W.2d 43, 48 (Mo. App. W.D. 1991), a defendant who started a verbal confrontation while possessing a pistol was considered an initial aggressor even though the victim participated in the argument and the defendant stated that he did not want to fight and wanted to "leave it alone."
Even viewed in the light most favorable to the defense, the evidence in this case showed Defendant was the initial aggressor. Defendant provoked the incident that led to the shooting of Victim. The undisputed evidence is the Defendant went to the residence at 18 Wilbert Drive in violation of an order of protection, illegally possessed a firearm, went around to the back of the home and climbed up onto an air conditioning unit with the firearm in hand and looked in the second story window. All of this conduct exists against the backdrop of previous confrontations and threats by Defendant or his friend Davis. Under these facts, it is clear Defendant was the initial aggressor. As such, he was not entitled to a jury instruction for self-defense.[2]
Even if he had not been the initial aggressor, Defendant may only assert self-defense if the facts viewed in the light most favorable to the Defendant would lead a reasonable person to believe that he was justified in using physical force to protect himself from the use or imminent use of unlawful force. No such belief could be reasonably formed under the facts of this case. First, no physical force at all was necessary for Defendant to protect himself. During the entire incident in question, Defendant was outside of the home, circling the house in the yard or climbing up to the second story to see inside the house, while the Victim was inside of the home. Victim never verbally threatened or confronted Defendant. According to the testimony of the Defendant, the only action taken by Victim was to point the gun from inside the home, first at Davis and then at Defendant, both of whom were outside of the home. Under these facts, no person would reasonably believe that physical force was necessary to defend himself.[3]
Second, even in the light most favorable to Defendant, there was no substantial evidence that Victim's use of force was unlawful. Defendant cannot assert self-defense if Victim was lawfully asserting force against *490 the Defendant. The provisions of the self-defense statute establish that Victim had the right to protect himself and the home he inhabited from the threat being posed by Defendant and Davis. When a person has reason to believe force is necessary to defend himself, he is allowed to use deadly force against someone who "unlawfully attempts to enter a dwelling." Section 563.031.2(2). Such force can also be used against "a person who unlawfully enters, remains after unlawfully entering, or attempts to unlawfully enter private property that is owned or leased by an individual, or is occupied by an individual who has been given specific authority by the property owner to occupy the property." Section 563.031.2(3).
Under the facts of this case, the Victim could reasonably believe that the use of force was necessary to defend himself. There is no dispute that Defendant was the subject of an order of protection which existed as a result of his violence toward Wife, and Defendant entered the property unlawfully. There is also no dispute that Victim lawfully occupied the home at 18 Wilbert Drive at the invitation of Wife. Defendant admits that he unlawfully possessed a gun on those premises, and that he climbed onto an air conditioning unit with that gun to look through a second story window, which would give the appearance of unlawfully trying to enter a building. Under those facts, the statute authorizes the use of deadly force by Victim against Defendant. Section 563.031.2. Therefore, any threat of such force posed by the pointing of a weapon is not the "use of unlawful force" against which Defendant can claim self-defense. In a murder case in which defendants had gone to a service station with an intention to conduct an armed robbery, the defendants were not entitled to a self-defense instruction even though the victim shot first and struck one of the defendants. State v. Hamilton , 337 Mo. 460, 85 S.W.2d 35, 37 (Mo. 1935). The Court in Hamilton succinctly summarized the principle which is now embodied in the self-defense statute, stating, "Deceased had the legal right to defend himself and his place of business against defendants' felonious acts. The plea of self-defense may only be asserted against an unlawful attack." Id.
Because Defendant was the initial aggressor in this matter and could have no reasonable belief that physical force was necessary to defend himself from the use of unlawful force, Defendant was not entitled to a self-defense instruction. Under the facts of this case, the trial court did not err in failing to give a self-defense instruction to the jury. Point denied.
II. The Trial Court Properly Overruled Objection to Closing Argument
In his second point on appeal, Defendant argues that the trial court erred in failing to sustain a relevancy objection during closing argument when the prosecutor referenced evidence that this incident occurred near a school bus stop by posing the question, "What about the children who would have been at the bus stop fifteen minutes later?"
Standard of Review
The standard of review of a trial court's rulings during closing arguments is for abuse of discretion. State v. Forrest , 183 S.W.3d 218, 226 (Mo. banc 2006). An abuse of discretion occurs if the ruling is "clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." State v. Matthews , 33 S.W.3d 658, 660 (Mo. App. S.D. 2000). The trial court has wide discretion in controlling the scope of closing argument.
*491 State v. Lee , 841 S.W.2d 648, 653 (Mo. banc 1992). The trial court is able to observe the contested incident to determine if it had any prejudicial effect on the jury. Id. A trial court's rulings regarding closing argument will result in reversal "only upon a showing of abuse of discretion resulting in prejudice to the defendant, i.e., that the outcome of the trial would have been different if the error had not been made." State v. Dominguez-Rodriguez , 471 S.W.3d 337, 349 (Mo. App. E.D. 2015).
Analysis
During closing argument, the State is permitted considerable latitude in arguing the necessity of law enforcement, crime prevention, and the need to uphold the law. Jones v. State , 389 S.W.3d 253, 258 (Mo. App. E.D. 2012). A prosecutor is permitted to argue general propositions regarding the prevalence of crime in the community and the personal safety of the community's citizens. State v. Collins , 150 S.W.3d 340, 354 (Mo. App. S.D. 2004). The prosecutor may not, however, "inflame the passions or prejudices of the jury against a defendant." State v. Dominguez-Rodriguez, 471 S.W.3d at 350. Such improper arguments include personal attacks, personalized arguments, and personal epithets and speculation about future crimes. Id.
The argument in this case was directed to the danger Defendant's conduct posed to particular people and the community, which is clearly permissible. This is not the type of statement which would "inflame the passions or prejudices" of the jury. See , State v. Pettit , 976 S.W.2d 585, 593 (Mo. App. W.D. 1998) (argument regarding shooting in a crowd near innocent bystanders was not inflammatory). Further, even if the comment had been improper, the trial judge is in the best position to determine whether the statement had any prejudicial effect on the jury. Lee , 841 S.W.2d at 653. The comment in question is not the kind of statement which would have such a prejudicial effect, and the outcome of the trial would not have been different if the statement had not been made. Defendant's second point is denied.
For the reasons set forth above, the judgment is affirmed in all respects.
Lisa P. Page, C.J. and Philip M. Hess, J., concur.

The effective date of this version of the self-defense statute was October 14, 2016. The incident in question occurred on November 16, 2016. This revised version differs from the prior version only in the duty to retreat. Bruner , 541 S.W.3d at 536 n. 6.

Defendant does not contend any of the exceptions to initial aggressor listed in subsections (a), (b) or (c) of section 563.031.1(1) apply in his case.

Defendant testified that he heard his daughter scream and then got up on the air conditioning unit to look for her in the house. There was no evidence that the daughter was in the room with the Victim and Defendant does not argue on appeal he acted in defense of others.