

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED107381 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | of the City of St. Louis |
| vs. | ) | 1622-CR03779-01 |
| | ) | |
| DEON MONTRELL RICE, | ) | Honorable Timothy J. Boyer |
| | ) | |
| Appellant. | ) | Filed: December 24, 2019 |

## OPINION

Deon M. Rice appeals the judgment of the Circuit Court of the City of St. Louis entered after a jury found him guilty as an accomplice of first-degree involuntary manslaughter, armed criminal action, and unlawful use of a weapon. Rice's convictions stem from an incident in which he traveled with five other men to an apartment building in order for two of their number to engage in fistfights with members of another group of six men they knew were inside. Three of the men in Rice's cohort were carrying firearms, and when they noticed the other group come outside with one man carrying a handgun, they opened fire and inadvertently but fatally shot one of their own.

On appeal, Rice contends that the trial court erred by failing to instruct the jury on self-defense or defense of a third person. Additionally, while conceding his failure to preserve the issue—and therefore, requesting plain error review—Rice asserts the court's verdict-directing

instructions for first-degree involuntary manslaughter and unlawful use of a weapon violated his right to a unanimous jury verdict. We find no reversible error and affirm.

## Background

This case arose from the violent culmination of multiple ongoing feuds. On the night of August 29, 2016, Rice was working at a Burger King restaurant at Loughborough Commons in South St. Louis City when a group of six men—Terrell Harvey, Lerrenzo Young, Jerome Hawkins-Shaw, Tyrone Evans, Kenneth Brooks, and Darwin Jones—entered the parking lot in Lerrenzo Young's vehicle. Two of the men, Young and Terrell Harvey, went into the restaurant to get money from Rice. While they were inside, two other men, Diamond White and Trent Anderson, entered the parking lot in another vehicle and blocked in Young's vehicle.

White had previously been in an intimate relationship with Jerome Hawkins-Shaw and believed that Hawkins-Shaw had cheated on him with Young. When White exited his parked vehicle, he hit Young's vehicle with a crowbar. Then, after Hawkins-Shaw emerged from Young's vehicle, White chased him around the parking lot with the crowbar. Eventually, Young and Harvey came back out of the restaurant and all the men but Rice, who remained inside on duty at work, left the Burger King parking lot in their two separate vehicles. The group of six men in Young's vehicle drove to where Tyrone Evans lived, at the Partridge Place Apartments in the Walnut Park neighborhood of North St. Louis City. White and Anderson did not follow.

Later that night, or during the early morning hours of August 30, 2016, however, White and Anderson drove to the Partridge Place Apartments and Anderson slashed the tires on Young's vehicle. During this time, as well, White and Hawkins-Shaw and Anderson and Harvey placed telephone calls and exchanged numerous text and Facebook messages threatening one another. Anderson and Harvey had been feuding for three or four years.

2

Around 2:00 or 3:00 a.m., White drove with Anderson back to the Burger King and picked up Rice from work. Rice did not know Anderson but was friends with White. While the men rode around in White's vehicle, Rice learned about the earlier confrontation in the Burger King parking lot and about the subsequent slashing of Young's tires at Partridge Place Apartments by Anderson. The three men discussed that White should have a fistfight with Hawkins-Shaw, and that Anderson should have a fistfight with Harvey. Rice testified that he was not going to fight anyone.

When White and Anderson told Hawkins-Shaw and Harvey in calls and messages that they were going to come over to the Partridge Place Apartments to have the two proposed fistfights, Harvey threatened to kill them if they tried. Rice's group knew Harvey possessed a handgun because they had seen him flaunt it in photographs on Facebook. They also believed that Harvey had his handgun with him at the apartment. Nevertheless, the men decided to travel from South St. Louis City to the Partridge Place Apartments in North St. Louis City to engage in the fistfights.

Before they made the trip, however, they drove to the residence in South St. Louis City of Diamond White's drug dealer, whom the men knew only by the nickname "Mook." When they arrived they found Mook in the company of two other men. White and Rice told Mook about the ongoing feuds and the plan to drive to Partridge Place Apartments for White and Anderson to have fistfights with Hawkins-Shaw and Harvey. They also told Mook about Harvey's threat to shoot them if they came over, and Mook and the two other men, all of whom were carrying firearms, agreed to accompany White, Rice, and Anderson in a separate vehicle, to serve as armed backup.

This cohort of six drove to Partridge Place Apartments with White, Anderson, and Rice riding in White's vehicle, and Mook and the two other men following in their own. Once both vehicles were parked outside the apartment building, White told Rice he was too intoxicated to be driving, as he had been drinking earlier. Rice agreed to take the driver's seat and White climbed

3

into the back seat. According to Rice's testimony at trial, at some point while the men were parked, he also told Mook that they were preparing to have the fistfights and that he should shoot into the air to scare the other men if they came out with a firearm. Then White or Anderson called Evans and said that they were outside and wanted to fight.

The group of six men came out of the apartment building. Harvey was carrying a handgun, Hawkins-Shaw had a bat, and Young held a glass bottle. Anderson began to exit White's vehicle to fight, but White alerted him that Harvey had a gun, so Anderson remained in the vehicle. White then yelled for Rice to drive away. As Rice began to drive, he and Anderson heard a single shot fired, followed by many more in rapid succession. Twenty shell casings from three different firearms, including two handguns and an automatic rifle, were found outside the apartment building afterward.

At some point while Rice was driving away, White was shot in the back. It was later determined that during the fusillade, a single bullet entered White's vehicle through the passenger-side taillight, traveled through the trunk, and struck him in the back seat. White perished at the hospital later that day.

The State charged Rice with three offenses: second-degree murder under a theory of felony murder, armed criminal action, and unlawful use of a weapon. All three charges were based on allegations that Rice was an accomplice in the commission of those offenses by an "unknown person," who the evidence showed was one of the men from Mook's vehicle. At trial, Rice requested that the jury be instructed on self-defense and defense of a third person, on the grounds that the person who shot White was using lawful force and Rice should get the benefit of those instructions since his liability was solely as an accomplice. The trial court refused to instruct on those special negative defenses.

4

The jury acquitted Rice of second-degree murder but found him guilty as an accomplice of the lesser included offense of first-degree involuntary manslaughter, the associated armed criminal action count, and one count of unlawful use of a weapon. Rice was sentenced to seven years in prison for first-degree involuntary manslaughter and three years for armed criminal action, to run concurrently, and two years for unlawful use of a weapon, to run consecutively to the other sentences, for a total of nine years in prison.

This appeal follows.

## Standard of Review

We review *de novo* preserved claims of instructional error. *State v. Bruner*, 541 S.W.3d 529, 534 (Mo.banc 2018). We will reverse only if such error was "so prejudicial that it deprived the defendant of a fair trial." *State v. Sanders*, 522 S.W.3d 212, 215 (Mo.banc 2017).

With respect to Rice's claims of instructional error that he concedes were not preserved, we review them for plain error alone, and reverse only if Rice "facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo.banc 2009). For instructional error to constitute plain error, the defendant must demonstrate that the trial court so misdirected or failed to instruct the jury that the error affected the jury's verdict. *State v. Celis-Garcia*, 344 S.W.3d 150, 154 (Mo.banc 2011).

## Discussion

1. *The trial court did not err by failing to instruct the jury on self-defense or defense of a third person.*

Rice raises two claims of error for the trial court's failure to instruct on the special negative defenses of self-defense and defense of a third person. He contends the court should have instructed the jury it had to find Rice not guilty of first-degree involuntary manslaughter, armed criminal action, and unlawful use of a weapon if it found the "unknown person" he aided or

5

encouraged in committing those offenses as an accomplice acted lawfully either in self-defense or defense of a third person when the "unknown person" shot Diamond White. Acknowledging that the "unknown person" likely did not intend to hit White, Rice points out that "Missouri courts have long applied the rule that if the killing or injury of a person intended to be hit would, under all the circumstances, have been excusable or justifiable on the theory of self-defense, then the unintended killing or injury of a bystander by a random shot fired in the proper and prudent exercise of such self-defense is also excusable or justifiable." *State v. Zumwalt*, 973 S.W.2d 504, 506 (Mo.App.S.D. 1998) (citing *State v. Fielder*, 50 S.W.2d 1031, 1034 (Mo. 1932)).

To address Rice's assertions of instructional error, we first note the applicable legal standards: In determining whether a failure to submit an instruction was error, "the evidence is viewed in the light most favorable to the defendant." *State v. Bruner*, 541 S.W.3d at 534. The court must submit a self-defense instruction or a defense of others instruction "when substantial evidence is adduced to support it, even when that evidence is inconsistent with the defendant's testimony," and "failure to do so is reversible error." *Id.* "Substantial evidence" is evidence putting a matter in issue. *Id.* at 535. Put another way, substantial evidence is "evidence that, if true, is probative of the issues from which the jury can decide the case." *State v. Drisdel*, 417 S.W.3d 773, 783-84 (Mo.App.E.D. 2013).

The elements of lawful self-defense or defense of a third person[1] that must be shown by substantial evidence are set forth, in relevant part, by § 563.031, RSMo 2012[2]:

1. A person may, subject to the provisions of subsection 2 of this section, use physical force upon another person when and to the extent he or she reasonably believes such force

---

[1] "The defense-of-others justification is essentially an extension of the self-defense justification, in that the actor may do in another's defense anything the person himself may have lawfully done in the circumstances." *State v. Bolden*, 371 S.W.3d 802, 805 (Mo.banc 2012).

[2] This statute was revised in October 2016. Because the crimes at issue occurred prior to that date, on August 30, 2016, the 2012 version of the statute applies to Rice's claim of self-defense.

6

to be necessary to defend himself or herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful force by such other person, unless:

(1) The actor was the initial aggressor; except that in such case his or her use of force is nevertheless justifiable provided:

(a) He or she has withdrawn from the encounter and effectively communicated such withdrawal to such other person but the latter persists in continuing the incident by the use or threatened use of unlawful force . . . .

(2) Under the circumstances as the actor reasonably believes them to be, the person whom he or she seeks to protect would not be justified in using such protective force;

(3) The actor was attempting to commit, committing, or escaping after the commission of a forcible felony.

2. A person may not use deadly force upon another person under the circumstances specified in subsection 1 of this section unless:

(1) He or she reasonably believes that such deadly force is necessary to protect himself, or herself or her unborn child, or another against death, serious physical injury, or any forcible felony . . . .

5. The defendant shall have the burden of injecting the issue of justification under this section. If a defendant asserts that his or her use of force is described under subdivision (2) of subsection 2 of this section, the burden shall then be on the state to prove beyond a reasonable doubt that the defendant did not reasonably believe that the use of such force was necessary to defend against what he or she reasonably believed was the use or imminent use of unlawful force.

Critically here, these elements include that the person who used force was *not* the initial aggressor, unless that person withdrew from the encounter and effectively communicated their withdrawal. § 563.031.1(1); *see also State v. Tate*, 561 S.W.3d 483, 488 (Mo.App.E.D. 2018) ("In cases where the defendant is the initial aggressor, the court is precluded from giving a self-defense instruction.").

The applicable instruction adopted by our Supreme Court, MAI-CR 3d 306.06A, refers in the fourth of its Notes on Use to "the initial aggressor" as the one who "provoked the incident." We are careful not to construe this concept of "provocation" too broadly—§ 563.031 specifically directs that the only sort of provocation that gives a person the right to use lawful force in self-defense is the use of unlawful force against them or conduct that puts the person in reasonable apprehension of the "imminent use" of such force. *Cf. State v. Morse*, 498 S.W.3d 467, 472

7

(Mo.App.W.D. 2016) ("An initial aggressor is one who first attacks or threatens to attack another."). Pursuant to this definition, this Court has held that where all the evidence indicates a person *by unlawful force or threat of the imminent use of unlawful force* provoked the incident in which they used such force, that person was the initial aggressor and is precluded from receiving an instruction on the lawful use of force. *See, e.g., State v. Chambers*, 714 S.W.2d 527, 529-31 (Mo.banc 1986) (finding "[t]here is simply no evidence in the record to support the conclusion that defendant was not the initial aggressor or that he did not provoke the entire series of deadly events" where the defendant entered a bar carrying a firearm, asked another patron to buy him a drink, and after the man refused using strong language, the defendant invited him to "settle" the matter outside, where he shot him).

Looking to this record, we find the trial court did not err by failing to instruct the jury on self-defense or defense of a third person, because substantial evidence is entirely lacking that the "unknown person" who used force was not one of the initial aggressors here. All the evidence supports that Rice's group, which included the unknown person serving as an armed bodyguard, drove across the City of St. Louis specifically to bring physical violence to another group who had warned against such a confrontation. There was no dispute that Rice's group journeyed to the Partridge Place Apartments with the express purpose of having Trent Anderson and Diamond White physically assault Terrell Harvey and Jerome Hawkins-Shaw. Moreover, Rice's group communicated this intention to the other men both before and after arriving at the apartment building, calling them and telling them to come out and fight just before the shooting incident occurred. And the unknown person, for his part, learned about Rice's group's plan to assault the other men before he chose to join them. Therefore, there can be no reasonable doubt that the unknown person, by bringing a firearm to the apartment building—at a minimum to aid Anderson

8

and White in carrying out their planned assault—provoked the shooting incident that resulted by bringing with him the threat of the imminent use of unlawful deadly force.

While Rice fixates on evidence that Terrell Harvey threatened Rice's group if they came over to the apartment building, there is no basis to conclude that such threats made Harvey into the initial aggressor here. Until Rice's group provoked the incident by courting danger and driving to the Partridge Place Apartments, Harvey's statement that he would kill men in Rice's group if they brought a fight to the apartment building simply did not threaten any imminent use of force. And even if the unknown person was told only to shoot into the air if Harvey or any of the men from the apartment building emerged with a firearm, there is no question that Rice's group provoked the incident by traveling across town with firearms to have a violent physical confrontation with the other group of men whether they wanted it or not—indeed, with full knowledge that the other men had a firearm and had warned them against coming over. Consequently, we find there was no substantial evidence the "unknown person" acted in a manner consistent with the lawful use of force under the governing standards of § 563.031, and the trial court properly refrained from instructing the jury as to that purported justification. Points denied.

2. *Rice's right to a unanimous jury verdict was not violated by the court's verdict-directing instructions on the offenses of first-degree involuntary manslaughter and unlawful use of a weapon.*

In his remaining points on appeal, Rice claims that the trial court plainly erred by instructing the jury that it could find him guilty of first-degree involuntary manslaughter and unlawful use of a weapon, as an accomplice to the acts of an "unknown person," if the jury found that Rice aided or encouraged "other persons" in committing the offense. Rice asserts the court's instructions violated his right to a unanimous jury verdict because, according to him, the

9

instructions failed to ensure the jury found Rice aided or encouraged the person who, in fact, committed the offenses. We disagree and find no plain error.

Rice's central argument is that the instructions allowed the jury to find Rice guilty of aiding or encouraging one of the men in Mook's vehicle to commit first-degree involuntary manslaughter and unlawful use of a weapon even though the jury may have found that Terrell Harvey was the person who, in fact, committed those offenses. Rice is incorrect because the instructions specifically required the jury to find that Rice aided or encouraged *the person who, in fact, committed the offenses.*

Here, the verdict-directing instructions for first-degree involuntary manslaughter and unlawful use of a weapon both began thusly:

> A person is responsible for his own conduct and he is also responsible for the conduct of other persons in committing an offense if he acts with the other persons with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids or encourages the other persons in committing it.

It follows therefore that the jury was instructed it could find Rice responsible for the conduct of another person only if he *shared with that person a common purpose* to commit the offense or *aided or encouraged that person* in committing it. We presume the jury followed the instructions given by the trial court. *State v. Rycraw*, 507 S.W.3d 47, 63-64 (Mo.App.E.D. 2016) (citing *State v. McFadden*, 369 S.W.3d 727, 752 (Mo.banc 2012)). Therefore, we do not find the jury may have convicted Rice for aiding or encouraging a different person than the one it found committed first-degree involuntary manslaughter and unlawful use of a weapon.

Furthermore, MAI-CR 3d 304.04, the Missouri Approved Instruction applicable here, advises that if the defendant aided or encouraged a person whose identity is "unknown," then the State may submit an instruction that makes only "a general identification of the [person[s]]

10

involved, such as 'another person,' 'other person(s)' etc."[3] The State followed this advice in submitting the challenged instructions here. The instructions stated that to find Rice guilty as an accomplice for the acts of an "unknown person," the jury had to find that Rice aided or encouraged "other persons" in committing those offenses. And critically, the jury was instructed by means of the paragraph quoted above that any guilty verdict it rendered here must be supported by a finding that the group of other persons Rice aided or encouraged included the unknown person who in fact committed the offenses. Points denied.

---

[3] MAI-CR 304.04, entitled "Parties: Defendant's Responsibility for Conduct of Another Person," provides in pertinent part:

A person is responsible for his own conduct and he is also responsible for the conduct of (another person) (other persons) in committing an offense if he acts with the other person(s) with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids or encourages the other person(s) in committing it.

(As to Count __, if) (If) you find and believe from the evidence beyond a reasonable doubt:

First, that (on) (on or about) [date], in the (City) (County) of _____, State of Missouri, [*Continue using the paragraphs from the MAI-CR 3d verdict director applicable to the offense and set out all the elements of the offense, ascribing the elements to the defendant or other person or persons with whom the defendant acted. See Notes on Use 5 for suggestions on handling various types of situations. See Notes on Use 7(b) for handling murder in the first degree. Place a comma at the end of the last paragraph submitting the elements of the offense. Then add the following:*]

then you are instructed that the offense of [*name of offense*] has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

(Second) (Third) ([*next numbered paragraph*]), that with the purpose of promoting or furthering the commission of that [*name of offense*], the defendant [*Insert basis for defendant's conduct being sufficient for being criminally responsible, using one of the following "(acted together with) (aided or encouraged) (acted together with or aided)." See Notes on Use 5 for the various options and when they should be used. After the appropriate option(s), state the name(s) of other person(s) or, if unknown, a general identification of the other(s) involved, such as "another person," "other person(s)," etc.*] in committing the offense, . . .

then you will find the defendant guilty (under Count __) of [*name of offense*] . . . .

11

## Conclusion

For the reasons set forth above, we affirm the judgment of the trial court.

_____
James M. Dowd, Presiding Judge

Gary M. Gaertner, Jr., J., and
Robin Ransom, J., concur.

12